Mark JACOBSON and Ranger Bakers, Inc., Plaintiffs-Appellants,

v.

The ORGANIZED CRIME AND RACKET-EERING SECTION OF the UNITED STATES DEPARTMENT OF JUSTICE et al., Defendants-Appellees.

No. 23, Docket 76-6015.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1976.

Decided Nov. 3, 1976.

---

Irving Mandell, Forest Hills, N. Y., for plaintiffs-appellants.

James E. Crowe, Jr., Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., and David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., on the brief), for defendants-appellees I. R. S. and its Officials.

Before MEDINA, ANDERSON and MULLIGAN, Circuit Judges.

MEDINA, Circuit Judge:

Plaintiffs Mark Jacobson and Ranger Bakers, Inc., appeal from a judgment denying their application for a preliminary injunction and dismissing their complaint against the Internal Revenue Service and the four individual defendants, Senzer, Pallila, Keenan, and Brennan.[1] This action was taken, after a hearing, by Judge Edward R. Neaher of the Eastern District of New York, and the opinion is reported at 403 F.Supp. 1332.

While plaintiffs present a number of alleged grievances, the thrust of their case begins with and centers around the Service's declaration and collection of two employment tax jeopardy assessments for the second and third quarters of 1975. The facts, as set out in the complaint and affidavit of Mark Jacobson submitted in support of plaintiffs' motion for a preliminary injunction, are as follows.

Mark Jacobson is the president and sole stockholder of Ranger Bakers, Inc. On October 29, 1974, Ranger purchased certain assets of Silvercup Bakers, Inc., then in bankruptcy proceedings under Chapter XI, and took over the running of the company. Ranger paid its federal employment taxes for the first quarter of 1975, which ended March 30.

However, beginning around May of 1975, Ranger fell into financial difficulties, and failed to make the weekly withholding tax deposits required under the Internal Revenue Code,[2] amassing a delinquency of approximately $264,500 for the second quarter of 1975.

Ranger maintains that its financial problems were caused by the concerted efforts of the Organized Crime and Racketeering Section of the Department of Justice and the Internal Revenue Service, which, it claims, were resolved to drive it out of business. Appellants allege that the Organized Crime Section, carrying on a "personal vendetta" against the Jacobson family (App. 7a, 26a), "leaked" to a New York City newspaper a story which appeared in May 1975 to the effect that Jacobson was a front for his father, Sam, who, the article asserted, manages an underworld gambling cartel. Appellants also allege vaguely that the Organized Crime Section intimidated and spread "false and malicious stories" among plaintiffs' customers, vendors, and banks in an effort to dissuade them from dealing with or extending credit to appellants. They claim it was as a result of the consequent loss of business and credit that they were unable to meet their federal tax obligations.

On September 30, 1975, appellants received a deficiency notice for the second quarter employment taxes, requesting payment by October 9. A meeting was held on September 30 in Ranger's office, between Jacobson and his attorney and three IRS

---

1. The complaint was dismissed against defendant Organized Crime and Racketeering Section of the United States Department of Justice on April 12, 1976, and judgment was entered on April 14. Apparently no appeal was taken

from that judgment, and the Organized Crime Section is not involved in this appeal.

2. 26 U.S.C. Sections 3102 and 3402; Treasury Regulations Section 31.6302(c)–1.

officers, including defendants Senzer and Pallila, at which time Jacobson explained Ranger's financial "plight" (App. 32a) and sought to be allowed to pay their tax debt in weekly installments of $10,000. No decision was reached, however, and the next day the Service made a jeopardy assessment under Section 6862 of the 1954 Code, and levied on Ranger's payroll account and on a number of its customers. Despite Ranger's representations to the IRS agents the day before that it would have difficulty raising the money, it paid the assessment and accrued interest on October 2nd.

On October 9, the Service having determined that payments for the third quarter, which ended September 30, were also delinquent, Revenue Officer Senzer informed appellants that the third quarter tax was due immediately.[3] On October 14 a jeopardy assessment was made with respect to these taxes, and levies followed. Apparently sometime shortly thereafter Ranger paid the second assessment. Allegedly as a result of the consequent strain on its resources, Ranger ceased operations one month later, on November 15, 1975.

The motion for a preliminary injunction was properly denied for lack of subject matter jurisdiction. The Anti-Injunction Act, 26 U.S.C. Section 7421, is specific and it is too clear for reasonable debate that all the acts sought to be enjoined constitute in one form or another "the assessment and collection of any tax." The denial of "even-handed treatment," which appellants choose to describe as required by constitutional due process, appears on the face of the complaint to be the refusal to allow appellants to pay their tax debt in installments as the Treasury Regulations permit.

Nor is the recent Supreme Court decision in *Laing v. United States*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976), strongly relied upon by appellants, of any avail to them. In *Laing* the taxable years of two income-tax payers were terminated by the IRS prior to their normal expiration dates

pursuant to the jeopardy termination provisions of Section 6851(a)(1) of the Internal Revenue Code, which permits accelerated termination of a taxpayer's taxable period when the IRS finds that the taxpayer intends to commit an act which will render ineffectual the collection of his income tax. The taxpayers failed to pay the tax as demanded, and the IRS levied upon and seized their property without having sent a notice of deficiency as required by Section 6861—receipt of such a notice being a jurisdictional prerequisite to a taxpayer's suit in the Tax Court for redetermination of his tax liability. The Supreme Court held that the income tax jeopardy assessment of Section 6851 is subject to the procedures of Section 6861, and the failure of the IRS to act as provided in Section 6861 rendered the Anti-Injunction Act inapplicable under the plain language of the statutory sections involved.

While appellants here make much of the IRS's failure to make an "immediate demand and notice" in this case with respect to the first of the two jeopardy assessments involved, suffice it to say that the tax issue and the statutory sections involved in *Laing* all dealt with income taxes, not with federal withholding taxes such as are at issue here, and there simply is no equivalent statutory exception for withholding taxes to render the Anti-Injunction Act inapplicable here.

With respect to the large money damage claims against the IRS and the individual revenue agents, the vague and conclusory allegations clearly state no claim for relief. *Black v. United States*, 534 F.2d 524 (2d Cir. 1976). Appellants' conspiracy point is founded on 42 U.S.C. Section 1985, which applies only to "racial, or perhaps otherwise class-based, invidiously discriminatory" action. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). There is no trace of any such allegation in this complaint.

---

**3.** 26 U.S.C. Section 6862 authorizes the Service to assess withholding and employment tax immediately, whether or not the normal time for

making a return and paying the tax has expired, when it believes that the collection of the tax will be jeopardized by delay.

The argument that appellants were "singled out" and thus deprived of the equal protection of the laws has a hollow sound when it is recalled that there is no dispute that the withholding taxes were not only due but they were actually paid in full. Were this court to find that such allegations constitute a claim for relief the result would be countless "constitutional tort" suits by criminals who are arrested or prosecuted, from alleged narcotics importers and distributors on down to muggers, those parking or speeding violators who receive tickets from the police and so on endlessly, as each one of these would say he was "singled out" and given discriminatory treatment.

Part of the relief granted to defendants by Judge Neaher was the quashing of a variety of subpoenas that appellants had issued in connection with the hearing on the application for a preliminary injunction. The issuance of these subpoenas is some indication of what would happen if we held that the mere use of the rhetoric of conspiracy and harassment, supplemented by claims of many millions of dollars of damages against these individual revenue agents, was sufficient to state a claim for relief in this type of suit.

■ We find no merit whatever in appellants' challenge of the constitutionality of Section 6862(a) of the Revenue Laws and Section 301.6862–1(a) of the Treasury Regulations, which is framed in the usual double aspects of "on their face" or "as applied."

Judge Neaher did not reach such immunity claims by the individual defendants as may be involved in this case; nor do we.

Affirmed.