**John M. RUFFLER, Plaintiff,**

v.

**PHELPS MEMORIAL HOSPITAL, the County of Westchester, the Westchester County Medical Center, Grasslands Hospital, New York Hospital, Dr. (first name unknown) DiCastro, Dr. (first name unknown) Di Carlo, Dr. "Astro" (phonetic spelling), Defendants.**

No. 77 Civ. 402.

United States District Court,
S. D. New York.

June 13, 1978.

Michael E. Timm, White Plains, N. Y., for plaintiff.

Semel, McLaughlin & Boeckmann, New York City, for defendants County of Westchester, Westchester County Medical Center, Grasslands Hospital & Dr. DiCastro; John M. Dellicarpini, New York City, of counsel.

Kelley, Drye & Warren, New York City, for defendant New York Hospital; Richard J. Concannon, Thomas J. Martin, Gregory S. Meredith, New York City, of counsel.

D'Amato, Costello & Shea, New York City, for defendants Phelps, Jewett & Nitzberg.

## OPINION

GAGLIARDI, District Judge.

Plaintiff John M. Ruffler commenced this civil rights action to recover damages for his allegedly involuntary and unlawful hospitalization by defendants Phelps Memorial Hospital (Phelps), Grasslands Hospital (Grasslands) and New York Hospital. Plaintiff claims that all of the defendants, while acting under color of state law, subjected him to physical mistreatment and deprived him of his liberty without due process, thus denying him his constitutional and civil rights in violation of 42 U.S.C. § 1983. Jurisdiction is alleged to exist under 28 U.S.C. § 1331, the general federal question statute, and under 28 U.S.C. § 1343(3), the jurisdictional counterpart to 42 U.S.C. § 1983. Defendants County of Westchester, Westchester County Medical Center (Medical Center), Grasslands and Dr. DiCastro, a psychiatrist on the Medical Center staff, (collectively the "County defendants") and New York Hospital have now moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P. New York Hospital has also moved to dismiss certain causes of action for failure to state a claim upon which relief can be granted. Rule 12(b)(6).

The basic allegations of the complaint are as follows. On September 10, 1976 plaintiff Ruffler was induced to voluntarily enter Phelps, a private hospital in North Tarrytown, New York, upon being informed by defendant Jewett, a psychiatrist on the staff at Phelps, that without such consent an involuntary commitment could be effected. Sometime thereafter defendant Nitzberg, a psychiatric counsellor at Phelps, persuaded plaintiff's wife to sign a petition for plaintiff's involuntary commitment to a mental institution by informing Mrs. Ruffler that her husband could be involuntarily committed even without her execution of the petition. It is alleged that these representations concerning the availability of involuntary commitment were false, and resulted in plaintiff's unlawful confinement at Phelps and his subsequent involuntary and unlawful transfer on September 13,

1976 to Grasslands, an agency of Westchester County, where his confinement continued. On September 21, 1976 he was transferred to New York Hospital, a private facility, where his involuntary confinement continued. It is further claimed that in continuing this alleged wrongful deprivation of his personal liberty, New York Hospital interfered with plaintiff's right to judicial review of his involuntary status, delaying a scheduled court appearance until October 5, 1976, when he was discharged from the hospital before the court hearing was held. In connection with his initial commitment and his confinement and treatment thereafter, plaintiff alleges that he was not afforded the protections guaranteed by the New York Mental Hygiene Law (McKinney 1976 and Supp. 1977) (amended 1978), that he was physically mistreated and deprived of his freedom of movement by the various defendants and that consequently his federally protected liberty and due process interests were violated. Ruffler also claims that the defendants' conduct constituted a conspiracy to deprive him of those rights.

### Rule 12(b)(1) Motion of the County Defendants

Claiming lack of jurisdiction under either 28 U.S.C. § 1331 or § 1343, the County defendants move to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed.R.Civ.P.[1] These defendants do not contest their state agency status, but rather argue that the complaint alleges a violation of state rather than federal law, and that plaintiff has an adequate remedy under New York state law to which he should be remitted. These contentions misconceive the nature of the federal remedy provided by 42 U.S.C. § 1983,[2] as well as the standard for determining whether an alleged federal question is substantial enough to support original jurisdiction under 28 U.S.C. § 1343(3).[3]

As held in *Hagans v. Lavine*, 415 U.S. 528, 535–543, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), to justify dismissal for want of jurisdiction the alleged constitutional claim must be "patently without merit," *id.*, at 542, 94 S.Ct. 1372, *quoting Bell v. Hood*, 327 U.S. 678, at 683, 66 S.Ct. 773, 90 L.Ed.2d 939 (1946), or "insubstantial, implausible, foreclosed by prior decision . . . or otherwise completely devoid of merit," *id.*, at 543, 94 S.Ct. at 1382, *quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, at 666–67, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). *See also Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

It is undisputed that a state cannot constitutionally subject an individual to involuntary civil commitment without satisfying due process safeguards. *O'Connor v. Donaldson*, 422 U.S. 563, 573–76, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *cf. In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Miller v. Vitek*, 437 F.Supp. 569 (D.Neb.1977) (three-judge court), *vacated and remanded for consideration of mootness*, —— U.S. ——, 98 S.Ct. 2276, 56 L.Ed.2d 381 (1978). In the instant case,

---

1. The factual allegations of the complaint are taken as established for purposes of these Rule 12(b)(1) motions. *Gardner v. Toilet Goods Ass'n.*, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); *Fifth Avenue Peace Parade Committee v. Hoover*, 327 F.Supp. 238, 240 (S.D.N.Y.1971).

2. 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress.

3. 28 U.S.C. § 1343 provides in pertinent part:
 The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

 \* \* \* \* \* \*

 (3) To redress the deprivation, under color of any State law,' statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; . . .

plaintiff's claims of constitutional due process violations by the defendants include the allegations that he and his wife agreed to defendants' requests for voluntary and involuntary commitment due solely to deliberate misrepresentations by these defendants concerning their own authority to order plaintiff's involuntary commitment; that the defendants failed to advise him of his rights to challenge his involuntary status and prevented him from doing so; that he was deprived of proper medical and psychiatric care, and was in fact forcibly subjected to harmful medication and physically and emotionally abusive treatment, while in defendants' custody; and that the defendants were at all times acting under color of state law. As observed in *O'Connor v. Donaldson, supra,*

> There can be no doubt that involuntary confinement to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law. . . . Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding. Equally important, confinement must cease when those reasons no longer exist.

422 U.S. at 580, 95 S.Ct. at 2496 (Burger, Ch. J., concurring) (citations omitted). Accordingly, plaintiff's claims readily satisfy the threshold standard of *Hagans v. Lavine, supra,* and jurisdiction is plainly proper.[4]

 The foregoing outline of plaintiff's contentions also makes clear that, although he does allege violations of the terms of New York's Mental Hygiene Law, his complaint does not restrict itself solely to claimed denials of state law. *Cf. Snowden v. Hughes,* 321 U.S. 1, 7–8, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944). In these claims that he was denied his liberty without due process, plaintiff has clearly alleged acts which independently constitute deprivations of his federal constitutional "rights, privileges, or immunities," and which are therefore actionable under 42 U.S.C. § 1983. *O'Connor v. Donaldson, supra,* 422 U.S. at 573–76, 95 S.Ct. 2486. "It is no answer that the State has a law which if enforced would give relief. The federal remedy [of § 1983] is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).[5]

 It is of course well established that a plaintiff need not exhaust state judicial proceedings before proceeding in federal court under § 1983. *Monroe v. Pape, supra*; *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609–10 n. 21, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). This universal rule is no less applicable to complaints alleging the deprivation of constitutional rights in the context of civil commitment by reason of mental illness. *Woe v. Mathews,* 408 F.Supp. 419, 426 (E.D.

---

4. Having determined that plaintiff's claims are sufficient to confer subject matter jurisdiction, this court need not now consider their merits any further. *Hagans v. Lavine,* 415 U.S. 528, 542 n. 10, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The County defendants have not moved to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R. Civ.P., and jurisdiction is not defeated by the possibility that the complaint might subsequently be found to fail to state a claim. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Cristina v. Dept. of State of New York,* 417 F.Supp. 1012, 1015 n. 3 (S.D.N.Y. 1976).

5. The analysis in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), of the supplementary nature of the federal remedy provided by 42 U.S.C. § 1983 is unaffected by *Monell v. Department of Social Services of the City of New York,* —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (No. 75–1914), which overrules *Monroe v. Pape* insofar as it had held that local governments are wholly immune from suit under § 1983. *Monell, supra,* 98 S.Ct. at 2021.

N.Y.1976), *aff'd mem. sub nom. Woe v. Weinberger,* 562 F.2d 40 (2d Cir. 1977). Although the Second Circuit does require exhaustion of administrative remedies in certain circumstances, *Eisen v. Eastman,* 421 F.2d 560 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); *see Morgan v. LaVallee,* 526 F.2d 221, 223 (2d Cir. 1975); *Fuentes v. Roher,* 519 F.2d 379, 386–87 (2d Cir. 1975); *see also Runyon v. McCrary,* 427 U.S. 160, 186 n. *, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Powell, J., concurring); *Gibson v. Berryhill,* 411 U.S. 564, 574–75, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), defendants have failed to suggest any such available and adequate administrative recourse here. Their motion is thus without merit and must be denied.

### *Rule 12(b)(1) Motion of Defendant New York Hospital*

In support of its motion for dismissal of the complaint against it for lack of subject matter jurisdiction, defendant New York Hospital contends that it, unlike the County defendants, functioned at all times as a private hospital, not a public institution, and that consequently it is not subject to the provisions of 42 U.S.C. § 1983.

█ It is firmly established that § 1983, *see* footnote 2, *supra,* and its parallel jurisdictional provision, 28 U.S.C. § 1343(3), note 3, *supra,* apply only when the defendant has acted "under color of state law," *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), a jurisdictional prerequisite which is equivalent to the "state action" requirement of the Fourteenth Amendment. *United States v. Price,* 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267; *Schlein v. Milford Hospital, Inc.,* 561 F.2d 427, 428 n. 1 (2d Cir. 1977). Although New York Hospital has established that it is privately financed and does not rely on significant public funding,[6] plaintiff contends that the hospital performed a "public function" such as to con-

stitute state action in confining him involuntarily, and is consequently subject to § 1983 suit. This court must agree that the requisite state action is present for, as set out in detail below, the hospital's allegedly improper confinement of plaintiff and the nature of the statute pursuant to which it undertook that confinement establish that in the circumstances of this case the hospital was performing a "public function," and that in the field of mental health care the State expressly depends on the use of private facilities to effectuate its public policy of providing treatment for those who need it. Furthermore, the plaintiff has established a clear connection between the public function performed by the hospital and the allegedly violative activity by which he claims to have suffered injury.

The "public function" theory of state action has been recognized and discussed repeatedly. *See, e. g., Flagg Brothers, Inc. v. Brooks,* —— U.S. ——, 98 S.Ct. 1729, 1732, 1738, 56 L.Ed.2d 185 (1978) (Nos. 77-25, 77–37, 77–42); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352–3, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Bond v. Dentzer,* 494 F.2d 302, 311–12 (2d Cir. 1974); *Coleman v. Wagner College,* 429 F.2d 1120 (2d Cir. 1970). It was recently analyzed and applied in *Perez v. Sugarman,* 499 F.2d 761 (2d Cir. 1974):

In certain instances the actions of private entities may be considered to be infused with "state action" if those private entities are performing a function public or governmental in nature and which would have to be performed by the Government but for the activities of the private parties. *See Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) [private management of municipal park]; *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944) [party primary elections]; *Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932) [elec-

---

**6.** Plaintiff has conceded that New York Hospital received no funding from the State of New York or the County of Westchester other than a grant of $50,000 for its Premature Infant Training Program. This *de minimis* grant was entirely unrelated to plaintiff's commitment and treatment at New York Hospital. *See Schlein v. Milford Hospital, Inc.,* 561 F.2d 427 (2d Cir. 1977).

tions]; *United States v. Wiseman*, [445 F.2d 792 (2d Cir.), *cert. denied,* 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971) (process servers)].

499 F.2d at 765. In *Perez,* the plaintiff alleged that her children had come under the custody of New York City welfare officials while she was hospitalized and that the children were subsequently transferred to the custody of two private child-care institutions. Following her release from the hospital, the plaintiff sought and failed to secure the release of her children from these private institutions. Alleging that the institutions had detained the children without parental consent, court order, or a hearing of any kind, the mother and her children commenced a civil rights suit under 42 U.S.C. § 1983 against, *inter alia,* the private institutions for deprivation of the plaintiffs' Fourteenth Amendment due process rights.

The Second Circuit concluded that the private institutional defendants performed a "public function" in accepting and retaining custody of children alleged to have been neglected or abandoned, and that they were therefore engaged in "state action". In so holding, the Court of Appeals observed that the pertinent provisions of the New York Social Services Law declared that the state assumed responsibility for children in need of care and protection, that the state could act directly or through private institutions in discharging that responsibility and that the state had enacted a comprehensive statutory regulatory scheme to supervise cooperating private institutions. 499 F.2d at 765–766.

█ *Perez* must control this case, for a strikingly similar role is played by private institutions such as defendant New York Hospital in New York State's procedures for caring for the mentally ill, including involuntary confinement, as established in

the New York Mental Hygiene Law ("NYMHL").[7] Civil commitment and treatment of the mentally ill is undoubtedly a "public function" in New York. The legislature's express statement of public policy declares that the "protection and promotion of the mental health of the people of the state and the prevention of mental illness . . . are matters of public concern. The state and local governments shall share responsibility . . . for the care, treatment, and rehabilitation of the . . . mentally ill." NYMHL § 1.03. As held by the New York Court of Appeals, "By provision of Constitution and statute (N.Y. Const., art. XVII, § 4; now Mental Hygiene Law, § 1.03 et seq., . . .) the State is responsible for the 'care, treatment, rehabilitation, education, and training of the mentally ill.' " *Kesselbrenner v. Anonymous,* 33 N.Y.2d 161, 167, 350 N.Y.S.2d 889, 893, 305 N.E.2d 903, 905 (1973) (citations omitted).

Private agencies such as New York Hospital are expressly included among the institutions (labelled "providers of services") which are authorized by statute to participate in the governmental function of caring for the mentally disabled. NYMHL § 1.05 subd. 5. The supervisory authority of the Commissioner of Mental Hygiene over the operations of existing mental health facilities, the construction of new facilities, and patient transfers from one facility to another, specifically extends to private entities. *Id.,* §§ 9.05(c); 13.23(b); 29.11(d). *See Application of MacCurdy,* 268 App.Div. 954, 51 N.Y.S.2d 673 (4th Dept. 1944) (commissioner may transfer patient to private institution without court order upon consent of the transferee private hospital). Private facilities are included in both "local" and "unified" services plans, NYMHL §§ 11.01, 11.-17(a), and 11.21(c) and (d); they are authorized to receive voluntary and involuntary admissions, *id.,* §§ 31.13(a) and 31.27, and

7. As noted above, the New York Mental Hygiene Law was amended as of April 1, 1978, *see* New York Mental Hygiene Law (McKinney Supp. 1977–1978, Appendix). The operative provisions of NYMHL as of the date of the occurrences challenged in the complaint are dispositive of the issue of New York Hospital's

contested role in the "public function" of involuntary confinement, and consequently references to specific statutory sections are to NYMHL as effective until April 1, 1978. New York Mental Hygiene Law (McKinney 1976 and Supp. 1977–1978).

*see id.,* § 31.31(c); they may retain patients, whether initially admitted voluntarily or involuntarily, on continued involuntary status with the appropriate judicial authorization, *id.,* §§ 31.13(b) and 31.33; they are empowered to receive emergency admissions, *id.,* § 31.39.

The pervasiveness of the state control established by the NYMHL over cooperating private institutions is further demonstrated by numerous other provisions which do not expressly refer to private facilities. For example, the NYMHL requires that *any* facility wishing to qualify as a "provider of services" must obtain an operating certificate from the Commissioner, NYMHL § 13.01, which requires the Commissioner's inspection and approval of the premises, equipment and personnel of the applying facility. *Id.* § 13.05. The Commissioner retains the power to investigate and inspect all approved facilities, *id.,* §§ 13.07–13.13, and to revoke operating certificates where appropriate, *id.,* § 13.15. Extensive provisions are made for the protection of all patients' rights, *id.,* §§ 15.01–15.17, and for the hospitalization of the mentally ill, *id.,* §§ 31.01–31, including both substantive and procedural safeguards for the mentally disabled. With specific reference to involuntary confinement, New York has made clear that "[n]o individual who is or appears to be mentally disabled shall be detained, deprived of his liberty, or otherwise confined without lawful authority" under NYMHL. *Id.,* § 13.19(a).

■ In light of New York's declaration of public policy and governmental responsibility and its extensive regulation of those private agencies engaged in providing mental health services, as set out above, this court need only paraphrase the Second Circuit's conclusion in *Perez v. Sugarman, supra,* to demonstrate that the activities allegedly performed by defendant New York Hospital constituted a "public function" sufficient to establish the requisite state action:

> [T]he statutory scheme expressly contemplates that in performing this public function of caring for [the mentally disabled] the State may utilize private entities of the sort we have here. This is precisely what the [county] officials did when they transferred [plaintiff] to the care of [New York Hospital]. But, as the statute makes incontrovertibly clear, it is the State which in effect is providing the care *through* the private institutions. This exercise of the administrative placing prerogative does not affect in any way the State's ultimate responsibility for the well-being of the [plaintiff] and, consequently, the public nature of the function being performed.

499 F.2d at 765 (emphasis in original; footnote omitted). Furthermore, as in *Perez,* an independent basis for finding state action is the "comprehensive statutory regulatory scheme . . . [which] is persuasive, perhaps compelling, evidence of the degree to which the state has insinuated itself into the actions of the private [hospitals]," *id.,* at 765, and which effectively makes such hospitals "an integral part of the public operation of providing assistance." *Id.,* at 766.[8]

---

8. The determination that state action is present in the circumstances of this case is supported by the careful analysis of the District Court in *Barrett v. United Hospital,* 376 F.Supp. 791 (S.D.N.Y.), *aff'd mem.,* 506 F.2d 1395 (2d Cir. 1974), in which the physician plaintiff claimed that the defendant private hospital's Board of Trustees had revoked his staff privileges in violation of his due process rights under 42 U.S.C. § 1983. Although it first concluded that the provision of general medical services has traditionally been "largely in the private domain" and therefore could not be considered a public function, 376 F.Supp. at 798–99 (*see* text, *infra*), the District Court implicitly concluded that the defendant hospital's activity in providing emergency hospitalization for the unidentified and without regard to ability to pay *did* constitute a public function, since such activity was required and regulated by state law. *Id.,* at 799 and nn. 33, 34. It was only the absence of a nexus between this governmental function performed by the hospital and the violative activity alleged by the plaintiff (his discharge from the staff without due process) which resulted in a finding of lack of state action. *Id.* As discussed in the text, *infra,* the required nexus is present on the facts of the instant action.

The nature of New York Hospital's conduct in the circumstances of this case is readily distinguishable from the private commercial activity recently declared by the Supreme Court not to constitute state action. In *Flagg Brothers, Inc. v. Brooks, supra,* 98 S.Ct. at 1729, the Court held that a warehouseman's enforcement of his lien on goods entrusted to him, through a proposed extra-judicial sale as permitted by New York Uniform Commercial Code § 7–210, was simply a means of resolving a "purely private dispute" which involved a statutory "system of rights and remedies, recognizing the traditional place of private arrangements in ordering relationships in the commercial world." *Id.,* at 1735. This kind of commercial remedy does not amount to a public function delegated by the State, the Court concluded, because it is not the "exclusive" means of resolving such a private commercial dispute, *id.,* at 1735–1736, and because the State permits, but does not compel, such conduct. *Id.,* at 1737. In the instant case by contrast, plaintiff's complaint against New York Hospital is not simply a private commercial dispute. Rather, compliance with the substantive and procedural provisions of New York's Mental Hygiene Law is the single lawful means by which an individual such as Ruffler can be committed and confined against his will by a private institution such as New York Hospital. *See, e. g.,* NYMHL § 13.19(a), quoted *supra.*

This court concludes that New York State's explicit assumption of governmental responsibility for mental health care, *and* its extensive statutory regulation of the terms of civil commitment of the mentally disabled, fundamentally distinguish the activity of New York Hospital here in issue—the involuntary confinement and treatment of the plaintiff—from other fields of activity which the Second Circuit has refused to characterize as inherently "public functions" constituting state action. *See, e. g., Powe v. Miles,* 407 F.2d 73, 79–80 (2d Cir. 1968) (university-level liberal arts education); *Grafton v. Brooklyn Law School,* 478 F.2d 1137, 1140 (2d Cir. 1973) (law school education); *Weise v. Syracuse University,* 522 F.2d 397, 404 n. 6 (2d Cir. 1975) (education); *Barrett v. United Hospital,* 376 F.Supp. 791 (S.D.N.Y.), *aff'd mem.,* 506 F.2d 1395 (2d Cir. 1974) (general hospital care); *Schlein v. Milford Hospital, Inc.,* 561 F.2d 427, 429 (2d Cir. 1977) (*accord*).

In addition, the considerable historical tradition of state involvement with involuntary civil commitment distinguishes this activity from either routine medical care or advanced education. *See* American Bar Foundation, The Mentally Disabled and the Law 1–13, 34–63, 250 (S. Brakel & R. Rock ed. 1971); Kittrie, The Right to Be Different 4–10, 58–74 (1971); Deutsch, The Mentally Ill in America (2d ed. 1949); Note, Civil Commitment of the Mentally Ill: Theories and Procedures, 79 Harv.L.Rev. 1288 (1966).

> There can be little doubt that in the exercise of its police power a State may confine individuals solely to protect society . . . Additionally, the States are vested with the historic *parens patriae* power, including the duty to protect "persons under legal disabilities to act for themselves." . . . The classic example of this role is when a State undertakes to act as " 'the general guardian of all infants, idiots, and lunatics.' "

*O'Connor v. Donaldson, supra,* 422 U.S. at 582–83, 95 S.Ct. at 2497 (Burger, Ch. J., concurring) (citations omitted).

Finally, it must be emphasized that the necessary connection between the governmental function performed by New York Hospital and its allegedly violative activity is undeniably present here. It is precisely the execution by New York Hospital of the specific conduct regulated and controlled by the state—the involuntary commitment, continued confinement, and medical care of the mentally disabled—that is challenged by the plaintiff. Thus, New York State is "involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury," *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir. 1968), and "there is a sufficiently close nexus between the State and the challenged action

of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 351, 95 S.Ct. at 453. *See Schlein v. Milford Hospital, Inc., supra,* 561 F.2d at 428–29; *Perez v. Sugarman, supra,* 499 F.2d at 766; *United States v. Wiseman,* 445 F.2d 792, 796 (2d Cir.), *cert. denied,* 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971); *Coleman v. Wagner College,* 429 F.2d 1120 (2d Cir. 1970); *Barrett v. United Hospital, supra,* 376 F.Supp. at 799. Accordingly, on the specific facts of this case the requisite state action may properly be attributed to defendant New York Hospital.[9]

### Abstention

Defendant New York Hospital alternatively moves this court to abstain from exercising its jurisdiction, under the equitable abstention theory of *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), in the event subject matter jurisdiction is upheld. This motion must be denied. As held in *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), "the doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important counter-

vailing interest." 360 U.S. at 188–89, 79 S.Ct. at 1063.

■ Here there is no such countervailing interest. Although plaintiff does allege violations of the New York Mental Hygiene Law, his federal claims are not based simply on those alleged statutory violations but include allegations of other tortious infringements of his Constitutional due process and liberty interests. This is thus not a case in which determination of state law "appears to furnish easy and ample means" of mooting or restating the constitutional claim. *Railroad Comm'n of Texas v. Pullman Co., supra,* 312 U.S. at 501, 61 S.Ct. at 645; *cf. County of Allegheny, supra,* 360 U.S. at 189, 79 S.Ct. 1060. Nor is this a case which presents difficult questions of state law implicating substantial policy concerns. As was the case in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), "While state claims are involved in the case, the state law to be applied appears to be settled. No questions bearing on state policy are presented for decision. Nor will decision of the state claims impair efforts to implement state policy." 424 U.S. at 815, 96 S.Ct. at 1245. Accordingly, this court declines to abstain from deciding plaintiff's claims.

### Rule 12(b)(6) Motions by New York Hospital

■ New York Hospital has also moved for an order pursuant to Rule 12(b)(6), Fed.

---

**9.** The extensive statutory authorization and definition of New York Hospital's functions with respect to plaintiff's involuntary commitment distinguishes this case from *Campbell v. Glenwood Hills Hospital, Inc.,* 224 F.Supp. 27 (D.Minn.1963). In *Campbell,* the court concluded from the lack of state legislative authorization that the private institutional defendant, into whose custody the plaintiff had been involuntarily committed by court order, had not been acting "under color of state law." Unlike the instant case, there the private hospital's authority to confine the patient was derived from and limited by the specific judicial order of commitment, not a general statute; the private hospital was answerable only to the committing court, not to the State Welfare Commissioner; and the Commissioner had no supervisory authority over the conditions of the

plaintiff's confinement. 224 F.Supp. at 30–31. Consequently, the court reasoned, the power of the defendant hospital to hold the plaintiff did not derive "from an actual vesting of authority by the state." *Id.,* at 31.

Similarly distinguishable is *Spampinato v. M. Breger & Co.,* 270 F.2d 46 (2d Cir. 1959), *cert. denied,* 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363 (1960), which concluded without discussion that state action was lacking when a private psychiatrist associated with a City Hospital signed an authorization for the commitment of the patient. Furthermore, to the extent the holding of *Spampinato* may be considered to be inconsistent with the fuller and more recent analysis by the Second Circuit in *Perez v. Sugarman, supra,* 499 F.2d 761, the careful reasoning and extensive discussion in *Perez* persuades this court of its correctness.

R.Civ.P., dismissing plaintiff's eleventh, twelfth and thirteenth causes of action as against it for failure to state a claim upon which relief can be granted. The thirteenth cause of action alleges a conspiracy by defendants to deprive plaintiff of his civil rights. Although this claim refers to and incorporates the previous allegations of the complaint, none of those allegations set forth any facts which could support a finding that New York Hospital conspired with other defendants to violate plaintiff's rights. It has long been established in this Circuit that claims based on the conspiracy provisions of the Civil Rights Act must do more than merely state vague and conclusory allegations, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Powell v. Workmen's Compensation Bd.,* 327 F.2d 131, 137 (2d Cir. 1964); *accord, Jacobson v. Organized Crime and Racketeering Section etc.,* 544 F.2d 637, 639 (2d Cir. 1976); *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir. 1976); *Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir. 1975); *Martin Hodas, East Coast Cinematics v. Lindsay,* 431 F.Supp. 637, 643–44 (S.D.N.Y.1977). This plaintiff has failed to do, and his conspiracy claim against New York Hospital must be dismissed.[10]

■ However, the motion to dismiss plaintiff's eleventh and twelfth claims is denied. Although they do appear merely to repeat prior allegations and add new claims for damages, Rule 8(a)(2) expressly provides that "relief . . . of several different types may be demanded." Whether plaintiff may ultimately be entitled to this relief does not depend on how he labels his demand for it.

### Conclusion

In accordance with the foregoing, the motion by New York Hospital to dismiss plain-

tiff's conspiracy claim as against it is granted. In all other respects, all motions are denied.

So Ordered.

---

**10.** As the cases cited above establish, vague and conclusory allegations are insufficient to plead a conspiracy under either 42 U.S.C. § 1983 or § 1985(3). In addition, the latter statute is applicable only to private conspiracies which involve a "racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckinridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). No such allegations of class-based discrimination are made by plaintiff, and § 1985(3) is therefore unavailable.