**Victoria FAULK, an individual, Plaintiff,**

v.

**Donald D. LUDWIG, A.C.S.W., an individual, and Community Mental Health and Counseling Center, Defendants.**

Civ. A. No. 88–1345.

United States District Court, W.D. Pennsylvania.

Jan. 30, 1990.

Louis M. Tarasi, Jr. and Joseph J. Hinchliffe, Pittsburgh, Pa., for plaintiff, Victoria Faulk.

James A. Stranahan, IV, Mercer, Pa., for defendant, Donald D. Ludwig, A.C.S.W.

David H. Patterson, Pittsburgh, Pa., for defendant, Community Mental Health and Counseling Center.

## MEMORANDUM

STANDISH, District Judge.

### I

■ This is a civil action in which plaintiff, Victoria Faulk, seeks damages from defendants Donald D. Ludwig, A.C.S.W. (Ludwig) and Community Mental Health and Counseling Center (CMHCC) for deprivation of her civil rights under 42 U.S.C. § 1983 and for pendent state law claims. Defendants have filed motions for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Specifically, defendants assert that plaintiff has failed to establish that their activities were conducted "under color of law" and, therefore, plaintiff has not stated a claim for relief under Section 1983. For the reasons set forth below, the motions will be granted.

### II

#### A.

In summary, plaintiff's complaint alleges the following:

1. Ludwig is a certified social worker and is employed by CMHCC as a psychotherapist.

2. CMHCC is a funded non-profit corporation. CMHCC receives funding from the Commonwealth of Pennsylvania for psy-

---

**1.** CMHCC filed a motion to dismiss the complaint of plaintiff on February 21, 1989 and Ludwig filed a similar motion on April 10, 1989. By order dated August 10, 1989, the court, *sua sponte*, ordered defendants to file affidavits and other supporting documentation, together with briefs, in support of their motions to dismiss on jurisdictional grounds. Plaintiff was ordered to file affidavits and other documentation, together with a brief, in opposition to defendants' motions. Accordingly, the court will treat the motions to dismiss as motions for summary judgment under Fed.R.Civ.P. 56.

chological counseling and for mental health services. CMHCC acts on behalf of Mercer County at county competency hearings and receives regular referrals from agencies, including courts, to aid them in psychological evaluation or treatment.[2]

3. On September 16, 1983, plaintiff sought psychological counseling through CMHCC due to depression, anxiety, marital and family problems, and concern about the recent death of her mother. Plaintiff complained of a lack of marital affection.

4. Plaintiff acquired the telephone number of CMHCC from her local telephone directory.

5. CMHCC referred plaintiff to Ludwig for psychotherapy and she commenced treatment on October 3, 1983. Individual therapy sessions occurred at CMHCC's satellite office at the First Presbyterian Church in Greenville, Pennsylvania. Therapy sessions continued until September, 1986.

6. In response to plaintiff's self-perceived lack of affection, Ludwig induced plaintiff to believe that Ludwig cared for her. Ludwig also induced plaintiff to have sexual intercourse with him as part of her therapy. Six months after the commencement of therapy, Ludwig began to require plaintiff to have sexual intercourse with him as a regular part of her psychotherapy and such conduct continued until approximately September, 1986.

7. On September 19, 1986, plaintiff sought counseling at Victim Support Services. During the course of counseling, plaintiff revealed for the first time that she had been wrongfully induced, through psychological manipulation, to have sexual intercourse with Ludwig. The effects of such wrongful psychological manipulation of Ludwig continue up to the present time and will continue into the future.

## B.

Plaintiff has filed an affidavit in opposition to defendants' motions for summary judgment which states:

1. Plaintiff sought assistance from CMHCC after learning about the center from a pamphlet provided by the Pennsylvania Office of Employment Security. She received a copy of this unsolicited pamphlet along with a Pennsylvania unemployment compensation check. To the best of her recollection, the pamphlet indicated that individuals feeling depressed, stressed or upset because of unemployment should seek psychological counseling.[3] The pamphlet listed psychological counseling centers across the state where assistance could be obtained. CMHCC was one of the listed centers.

2. Plaintiff contacted CMHCC and believed that she was contacting a governmental agency of the Commonwealth of Pennsylvania or Mercer County. She relied on CMHCC as being a governmental agency. She had no money or private insurance to pay for the services and believed that she was receiving a government benefit. She was not aware of any other agency in her area where she could receive similar services.

Plaintiff asserts that the foregoing facts alleged in the complaint and set forth in the affidavit establish that defendants' conduct was "under color of law" for purposes of this Section 1983 action.

## C.

In support of the motions for summary judgment, CMHCC submitted the affidavit of Kathleen Ann Moser and Ludwig submitted the affidavit of Richard C. Wynn. Ms. Moser's affidavit states:

1. She is the Director of Clinical Services and acting interim Executive Director for CMHCC.

2. According to the Articles of Incorporation and corporate by-laws, (copies of which are attached to the affidavit) CMHCC is a private, non-profit corporation licensed in the Commonwealth of Pennsylvania.

---

**2.** CMHCC has admitted this allegation in its answer to plaintiff's complaint.

**3.** Plaintiff has been unable to locate a copy of this pamphlet in her records.

3. CMHCC is not a department of any local, state or federal government.

4. All decisions relating to the operation of CMHCC are made by the corporation's Board of Directors.

In the affidavit filed on behalf of Ludwig, Mr. Wynn states:

1. He is the Administrator of the Mercer County Mental Health/Mental Retardation Administration.

2. He has personal knowledge of the relationship between Mercer County and CMHCC.

3. CMHCC is a private non-profit corporation which provides services for Mercer County and is not a governmental unit or a state agency.

### III

■ Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986).

■ At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). The existence of a factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment only if there is a "genuine" issue of "material" fact. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

In the present case, the court concludes that plaintiff has failed to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial. *Celotex, supra.* Namely, plaintiff has failed to establish that the actions of defendants were taken "under color of law".

Accordingly, defendants are entitled to summary judgment in their favor and against plaintiff as a matter of law in this Section 1983 action.

### IV

"In cases under § 1983, 'under color of law' has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982), quoting *United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966). Thus, the court may consider the "state action" cases in resolving the issue at hand.

"While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action' on the other, frequently admits of no easy answer." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–50, 96 S.Ct. 449, 452–53, 42 L.Ed.2d 477 (1974). The determination of when the conduct of private parties is converted into state action is "necessarily [a] fact-bound inquiry." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982).

In *Community Medical Center v. Emergency Medical Services of Northeastern Pennsylvania, Inc.*, 712 F.2d 878 (3d Cir. 1983), a federal civil rights action was brought challenging the designation of a new resource hospital by a nonprofit corporation that was organized to coordinate emergency health care services. The United States District Court for the Middle District of Pennsylvania dismissed the complaint for lack of subject matter jurisdiction and an appeal was taken. The United States Court of Appeals for the Third Circuit affirmed, holding that the designation by a nonprofit corporation of a new resource hospital did not involve state action entitling the hospital which lost the designation to maintain a federal civil rights action. In addressing the proper standard

to be applied in determining the presence of state action, the Court stated:

Perhaps because of the manifold forms of state involvement or acquiescence in private activity, the Supreme Court has thus far not attempted to develop a single standard for ascertaining the existence of state action and has stated explicitly that no such unitary test is possible. (footnote omitted) Instead, it has adopted a number of approaches depending on the circumstances and has counseled lower courts to investigate carefully the facts of each case. (footnote omitted) The only approaches arguably relevant to this appeal are the overall interdependence or symbiotic relationship analysis set forth in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the close nexus test of *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), and the public function approach of *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), and *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

712 F.2d at 880.

The relevant analyses in the present case are the close nexus and the public function tests.[4] However, under either test, the court concludes that plaintiff fails to establish that defendants' actions were "under color of law."

*Close Nexus*

■ In *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), petitioner brought suit against respondent, a privately owned and operated utility corporation which holds a certificate of public convenience issued by the Pennsylvania Utility Commission, seeking damages and injunctive relief under 42 U.S.C. § 1983 for the termination of her electric service, allegedly before she had been afforded notice, a hearing and an opportunity to pay any amounts found due. Petitioner claimed that under state law she was entitled to reasonably continuous electric service and that respondent's termination for alleged nonpayment, permitted by a provision of its general tariff filed with the Pennsylvania Utility Commission, was state action depriving petitioner of her property without due process of law and giving rise to a cause of action under Section 1983. The United States Court of Appeals for the Third Circuit affirmed the district court's dismissal of petitioner's complaint based on the absence of state action. On certiorari, the United States Supreme Court held that the Commonwealth of Pennsylvania was not sufficiently connected with the challenged termination of services to make respondent's conduct attributable to the State for purposes of the Fourteenth Amendment. Petitioner showed no more than that respondent was a heavily regulated private utility with a partial monopoly and that it elected to terminate service in a manner that the Pennsylvania Utility Commission found permissible under state law.

Addressing the close nexus requirement for "state action", the Supreme Court stated:

Here the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. (footnote omitted). [*Moose Lodge No. 107 v. Irvis*], 407 U.S., [163] at 176–177 [92 S.Ct. 1965, at 1973, 32 L.Ed.2d 627 (1972)]. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so. *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 462 [72 S.Ct. 813, 820, 96 L.Ed. 1068] (1952). It may well be that acts of a heavily regulated utility with at least something

---

**4.** After argument on defendants' motions to dismiss, counsel for plaintiff directed a letter to the court dated November 1, 1989, addressing certain matters that arose during oral argument.

In the letter, counsel for plaintiff asserts that the close nexus theory and the public function analysis aptly apply to this case.

of a governmentally protected monopoly will more readily be found to be "state" acts than will the acts of an entity lacking these characteristics. But the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *Moose Lodge No. 107, supra,* at 176 [92 S.Ct. at 1973]. The true nature of the State's involvement may not be immediately obvious, and detailed inquiry may be required in order to determine whether the test is met. *Burton v. Wilmington Parking Authority, supra.*

419 U.S. at 350–51, 95 S.Ct. at 453–54, 42 L.Ed.2d at 483–84.

■ In the present case, it is undisputed that CMHCC is a private, non-profit corporation; that CMHCC is not a department of any local, state or federal government; that all decisions relating to the operation of CMHCC are made by the corporation's Board of Directors; that CMHCC receives funding from the Commonwealth of Pennsylvania;[5] that CMHCC is licensed by the Commonwealth of Pennsylvania; that CMHCC regularly receives referrals from State agencies, including courts;[6] that plaintiff learned about CMHCC from a pamphlet provided by the Pennsylvania Office of Employment Security with an unemployment compensation check; that the Commonwealth of Pennsylvania, through the Department of Public Welfare, paid for the mental health services provided to plaintiff; and that plaintiff believed that she was dealing with a governmental agency.[7]

In *Cardio–Medical Associates, Ltd. v. Crozer–Chester Medical Center,* 536 F.Supp. 1065 (E.D.Pa.1982), physicians brought an action against a hospital and others based on a denial of specialized staff privileges. On a motion for judgment on the pleadings, the district court dismissed plaintiffs' Section 1983 claim, alleging a denial of due process. The district court held that the complaint did not sufficiently allege state action on the part of the hospital. With respect to the close nexus analysis, the district court stated:

> All courts considering application of this nexus requirement have imposed on plaintiffs the burden of demonstrating that "the state [is] involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury." *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir.1968). Plaintiffs' complaint in this case is completely devoid of any allegations suggesting the existence of any nexus between the state or federal government and CCMC's refusal to grant plaintiffs the privilege of performing the specified cardiology procedures at the hospital. (footnote omitted) The complaint contains no suggestion that Pennsylvania, by regulation or otherwise, directed, influenced, or in any way controlled CCMC's decisions regarding hospital approval of plaintiffs' applications for the specified cardiology privileges. I therefore hold that the "sufficiently close nexus" standard enunciated in *Jackson,* and applied in numerous hospital cases, (citations omitted) has not been met in the instant case.

536 F.Supp. at 1091.

Similarly, in the present case, plaintiff's complaint is absolutely devoid of any allegations suggesting the existence of any nexus between the Commonwealth of Pennsylvania and the alleged misconduct of Ludwig, an employee of CMHCC, which gave rise to the instant action. Plaintiff makes no allegation that the Commonwealth of Pennsylvania directed, influenced or exercised any control over the personnel

---

**5.** The extent of state funding is not apparent from the record. For purposes of the presents motions, the court will assume that the extent of State funding is extensive.

**6.** Plaintiff did not offer evidence of the percentage of CMHCC's services which are provided based on referrals from State agencies.

**7.** The court concludes that plaintiff's belief that she was dealing with a governmental agency is irrelevant to the issue presently before the court. The existence of "state action" in a particular case cannot turn on such subjective considerations.

policies of CMHCC, including the supervision of its employees.

█ It is clear that considerable public funding and extensive regulation by the State is insufficient to turn the conduct of private parties into state action. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Moreover, considering the cumulative effect of all the facts that establish some relationship between the Commonwealth of Pennsylvania and CMHCC in the present case, plaintiff clearly has failed to meet her burden of demonstrating that the State was involved with the activity that inflicted injury upon her. Under the circumstances, the court concludes that the close nexus standard has not been met.

*Public Function*

█ Turning to the public function test, plaintiff asserts that the care of the mentally ill is a traditional public function. Plaintiff maintains that the Commonwealth of Pennsylvania, through its legislature, has recognized this traditional public function in the Mental Health Procedures Act, 50 P.S. § 7101 *et seq.*, (the Act). Section 7102 provides in part:

**§ 7102.  Statement of policy**

It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected....

50 P.S. § 7102.

By its terms, however, the Act on which plaintiff relies does not apply to her. The scope of the Act is set forth in Section 7103 which provides in part:

**§ 7103.  Scope of Act**

This act establishes rights and procedures for all *involuntary treatment* of mentally ill persons, *whether inpatient or outpatient,* and for all *voluntary inpatient* treatment of mentally ill persons....  (emphasis added).

50 P.S. § 7103.

Plaintiff sought the services of CMHCC on a voluntary, outpatient basis for depression. Therefore, she does not fall within the scope of the Act.[8]

█ The decisions of the United States Supreme Court in *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) and *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), provide guidance to the court in analyzing the present facts under the public function test. In *Blum*, respondents challenged the decisions of nursing homes to discharge or transfer Medicaid patients to lower levels of care. The United States Supreme Court held that respondents had failed to establish "state action" in such decisions and, therefore, failed to prove that petitioners had violated rights secured by the Fourteenth Amendment. With respect to the public function analysis, the Supreme Court stated:

We are also unable to conclude that the nursing homes perform a function that has been "traditionally the exclusive prerogative of the State." *Jackson v. Metropolitan Edison Co., supra,* at 353 [95 S.Ct. at 455]. Respondents' argument in this regard is premised on their assertion that both the Medicaid statute and the New York Constitution make the State responsible for providing every Medicaid patient with nursing home services. The state constitutional provisions cited by respondents, however, do no more than authorize the legislature to provide funds for the care of the needy. See N.Y. Const., Art. XVII, §§ 1, 3. They do not mandate the provision of

---

**8.** Moreover, even if the Act applied to plaintiff, the court concludes that the policy statement set forth in the Act does not compel the conclusion that state action exists under the public function analysis in the present case. *See Santori v. Fong,* 484 F.Supp. 1029 (E.D.Pa.1980) (While the policy of the Commonwealth of Pennsylvania is to provide adequate mental health care for all persons in the least restrictive environment, a mere statement of policy, without more, will not rise to the level of a constitutionally protected interest in property or liberty, because neither an affirmative duty nor a specific right is created).

any particular care, much less long-term nursing care. Similarly, the Medicaid statute requires that the States provide funding for skilled nursing services as a condition to the receipt of federal moneys. 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(4)(A) (1976 ed. and Supp. IV). It does not require that the States provide the services themselves. Even if respondents' characterization of the State's duties were correct, however, it would not follow that decisions made in the day-to-day administration of a nursing home are the kind of decisions traditionally and exclusively made by the sovereign for and on behalf of the public. Indeed, respondents make no such claim, nor could they.

457 U.S. at 1011–12, 102 S.Ct. at 2789–90, 73 L.Ed.2d at 551.

In *Rendell–Baker,* the respondent school was a privately operated school for maladjusted high school students. Nearly all of the students were referred to the school by city school committees under a Massachusetts statute or by a state agency. When students were referred to the school by the city committees, these cities paid for the students' education. The school also received funds from a number of state and federal agencies. Public funds had recently accounted for at least 90% of the school's operating budget. To be eligible for tuition funding under the state statute, the school was required to comply with a variety of state regulations, but these regulations imposed few specific personnel requirements. Similarly, the school's contracts with the State and the city committees generally did not cover personnel policies.

Petitioners, a former vocational counselor and teachers at the school, brought separate actions in the district court under 42 U.S.C. § 1983, claiming that they had been discharged by the school in violation of their First, Fifth and Fourteenth Amendment rights. The district court dismissed the counselor's action but denied a motion to dismiss the teachers' action, reaching conflicting conclusions as to whether the school had acted "under color of law" so as to be subject to liability under Section 1983.

On appeal, the cases were consolidated, and the United States Court of Appeals for the First Circuit held that it was error to conclude that the school acted "under color of law," since, although regulated by the State, it was not dominated by the State, especially with respect to decisions involving discharge of personnel. On certiorari, the United States Supreme Court held that the school did not act "under color of law" when it discharged the petitioner employees and that, therefore, petitioners had not stated a claim for relief under Section 1983. In addressing the public function test, the Supreme Court stated:

> The third factor asserted to show that the school is a state actor is that it performs a "public function." However, our holdings have made clear that the relevant question is not simply whether a private group is serving a "public function." We have held that the question is whether the function performed has been "traditionally the *exclusive* prerogative of the State." *Jackson, supra,* at 353 [95 S.Ct. at 455]; quoted in *Blum v. Yaretsky, post,* at 1011 [102 S.Ct. at 2789] (emphasis added). There can be no doubt that the education of maladjusted high school students is a public function, but that is only the beginning of the inquiry. Chapter 766 of the Massachusetts Acts of 1972 demonstrates that the State intends to provide services for such students at public expense. That legislative policy choice in no way makes these services the exclusive province of the State. Indeed, the Court of Appeals noted that until recently the State had not undertaken to provide education for students who could not be served by traditional public schools. [*Baker v. Kohn,*] 641 F.2d [14], at 26 [ (1st Cir.1981) ]. That a private entity performs a function which serves the public does not make its acts state action.

457 U.S. at 842, 102 S.Ct. at 2772, 73 L.Ed.2d at 428.

There is no question in the present case that defendants perform a "public function." However, the court concludes that the public function performed by defendants has not been "traditionally the *exclu-*

*sive* prerogative of the State." *Id.* The court's determination in the present case is necessarily limited to the particular facts before the court. If plaintiff had been involuntarily or voluntarily committed to the custody and care of the State due to her mental illness, the court's conclusions regarding the presence of state action might well be different. *See, e.g., Fialkowski v. Greenwich Home for Children, Inc.,* 683 F.Supp. 103 (E.D.Pa.1987) (Where state chooses to delegate responsibility for retarded citizens' care and well being and institution or other private entity chooses to assume it, neither state nor private entity may assert that entity's acts and omissions do not occur under of color of state law for purposes of civil rights claim); *Davenport v. Saint Mary Hospital,* 633 F.Supp. 1228 (E.D.Pa.1986) (Supreme Court decisions suggest that it is exclusively the state's prerogative to confine an individual involuntarily to a mental hospital and, in this context, the state takes on a custodial function); *Lombard v. Eunice Kennedy Shriver Center for Mental Retardation, Inc.,* 556 F.Supp. 677 (D.Mass.1983) (Private organization's contractual role in discharging affirmative state obligation to provide adequate medical care for involuntarily committed residents of state mental institutions amounted to "state action" for purposes of Fourteenth Amendment and civil rights laws); and *Ruffler v. Phelps Memorial Hospital,* 453 F.Supp. 1062 (S.D.N.Y.1978) (Private hospital performed public function with respect to its confinement and care of plaintiff such as to constitute state action required for maintaining suit against hospital under civil rights statute). Under the circumstances, the motions of defendants for summary judgment on plaintiff's claim under Section 1983 will be granted.

Since plaintiff has failed to state a cause of action under federal law, the court will decline to exercise pendent jurisdiction over her state law claims. *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).