William Mark WATKINS, M.D., Plaintiff,

v.

W. P. ROCHE, Jr., M.D.; W. Douglas Skelton, M.D.; Commissioner of the Department of Human Resources of the State of Georgia and his Successors in Office; Mickey M. Crouch, M.D.; and Douglas Lee Smith, M.D., Defendants.

Civ. A. No. CV181-59.

United States District Court, S. D. Georgia, Augusta Division.

Dec. 24, 1981.

---

**328**

Stephen E. Shepard, Augusta, Ga., Kenneth R. Fielder, Cochran, Ga., for plaintiff.

Carol Cosgrove, Asst. Atty. Gen., Atlanta, Ga., W. Ward Newton, David R. Smith, Lyons, Ga., for defendants.

## ORDER

BOWEN, District Judge.

On March 27, 1979, Dr. W. P. Roche, Jr., a defendant in this action, executed a physician's certificate, as authorized by Ga.Code Ann. § 88–404.2, which resulted in the plaintiff's involuntary temporary commitment to a state mental health facility for examination. The physician's certificate [hereinafter "certificate"] is a document which states that the person named therein has been personally examined by the signing physician and appears to be in need of involuntary treatment for either alcoholism, drug dependency or drug abuse. The certificate allows a peace officer to take the person into custody and deliver him or her to an emergency receiving facility for examination. Upon execution of the certificate, plaintiff was taken to the emergency receiving facility at Georgia Regional Hospital in Augusta, Georgia.

Plaintiff brought this action under 42 U.S.C. § 1983 against defendant Roche, among others, alleging that defendant's execution of the certificate unconstitutionally deprived him of his civil rights. Plaintiff alleges that the defendant's action in signing the certificate was negligent and performed under color of state law. Defendant Roche filed a motion to have himself dismissed from this suit on the ground that his acts did not constitute state action as contemplated by section 1983. Although defendant's motion is denominated as one to dismiss for lack of subject matter jurisdiction, it is more in the nature of a motion, under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted and will be treated accordingly.

The single issue in this matter, to which there is no easy answer, is whether the defendant acted under the color of state

law in executing the certificate, involuntarily subjecting the plaintiff to an examination. Plaintiff asserts that the defendant's acts, as authorized by statute, constitute state action in that he was performing a "public function," or a function traditionally left to the state. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). It is plaintiff's position that the defendant, though a private individual, was so cloaked with the authority of the state that his actions were, in effect, those of the state.

A determination of whether state action exists is made on a case-by-case basis. *Sims v. Jefferson Downs, Inc.*, 611 F.2d 609 (5th Cir. 1980). In making this determination, the proper test to be applied is "whether there is a sufficiently close nexus between the state and the challenged action ... so that the [challenged] action may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (brackets added). A review of the plaintiff's allegations, which in a Rule 12(b)(6) motion are taken as true, and of the applicable law does not show a "sufficiently close nexus" to warrant a finding of state action.

Plaintiff alleges that the state action present in this case springs from the defendant's execution of the certificate under the authority of Ga.Code Ann. § 88–404.2. The defendant does not dispute he executed the certificate. He does dispute that that conduct was a performance of a "public function" such that he was, in reality, acting for the state.

Under Georgia law, a person believed to be an alcoholic, drug dependent, or a drug abuser may be taken to a state emergency receiving facility for examination. The purpose of the examination is to determine if there is reason to believe that the examined person fits one of the above-described categories and to determine whether that individual may therefore require involuntary treatment. Ga.Code Ann. § 88–404.4 (1979). Georgia Code Annotated § 88–404.2 sets out the circumstances under which a person may be taken, involuntarily, for examination and the procedures to invoke the process of examination. There are two methods. In section 88–404.2(a), any physician may execute a physician's certificate. The certificate states that the person was examined by the signing physician within the preceding forty-eight hours and that based upon the doctor's observations, the person appears to be an alcoholic, drug-dependent individual, or a drug abuser requiring involuntary treatment. The certificate is of limited duration, lasting only seven days. A peace officer must act within seventy-two hours of receiving the certificate to take the person into custody and transport him to the nearest emergency receiving facility for examination.

Thus, the consequence of a certificate is nothing more than an examination, albeit involuntary. The power of a certificate is very limited. It does not commit a person for treatment. It merely subjects a person to any emergency care that may be required and an examination by the state to confirm or reject the beliefs stated in the certificate. Once a person is admitted to a receiving facility, an examination must be made by a state doctor within twenty-four hours. The decision to refer a person for further evaluation and, perhaps, for treatment rests with the state and the state alone. A private physician cannot commit someone, in the usual sense of the word, solely by a certificate. Basically, the certificate simply initiates the state's involvement and is not of and in itself the point of origin of state action.

Physicians are not the only ones who may inaugurate the process subjecting a person to an examination. Subsection (b) of section 88–404.2 provides for a court ordered examination. The court must base its order on one of two things: an unexpired physician's certificate or the affidavits of at least two persons which meet the same empirical criteria of subsection (a). The order directs a peace officer to take the person named either to a physician who has agreed to examine the person or directly to an emergency facility for examination.

From the foregoing discussion, two notable points are evident. First, the subjugation of an individual for an involuntary examination is not dependent upon a physician's certificate. Laymen may, by way of affidavits, initiate the process leading to an examination as well, although in not as a direct a manner as physicians. Secondly, physicians are not compelled by the state to sign certificates. Both of these factors militate against the finding of state action.

The procedural differences of subsections (a) and (b) do not detract from the private nature of the conduct permitted by those sections. The beliefs of laymen, grounded on credible observations, are sufficient to warrant a court ordered examination. The fact that a court makes the final decision should not be viewed as meaning that the nature of a physician's conduct, in the context of section 88–404.2(a), is equal to that of the court in terms of state action. The distinction in procedure is justified since it is rare that laymen are qualified to make medical judgments. The presence, or rather, the interposition, of the court serves as a shield to guard against malicious or vexatious attempts to harass a person by subjecting him to needless examinations. The court is not saying that a doctor is necessarily above the abusive use of the authority of section 88–404.2. It recognizes that there are incentives not to abuse this authority that are not applicable to a layman, such as, perhaps, the loss of the license to practice medicine for professional misconduct or the possibility of being sued for malpractice. By allowing a physician to bypass the necessity of obtaining a court order, the legislature implicitly recognized that a physician's training, expertise, and professionalism qualify him to make a judgment in the best interests of a person to which a court could add but little, if anything.

Because section 88–404.2 permits ordinary citizens other than doctors to initiate the process for securing examinations, the suggestion of state action under the theory of performing a "public function" found in defendant's conduct is weakened, if not eliminated. Otherwise, the actions of laymen would be subjected to the label of state action. Furthermore, throughout the various provisions of section 88–4 *et seq.*, the judgment of the private physician is sought, but is not required. Rather, it is the judgment of the state's physicians that is determinative of the question of further examination or treatment. To open physicians to federal suit by decreeing that they act for the state in making purely medical decisions would effectively chill the use, and accompanying benefit, of a private physician's judgment in an emergency situation simply because the physician may not be willing to give it for fear of being exposed to a lawsuit. The disadvantage in this is the statutory alternatives do not provide the immediacy of action of a physician's certificate.

The second important point gleaned from the statutes is that the physician is not required, or compelled in any way by the state, to execute a certificate; nor is he required to examine a person ordered, by a court, to be examined under section 88–404.2(b). Again, as stated earlier, a certificate is not the exclusive means for having a person examined. The state does not reward a physician for executing a certificate or punish him for failing to sign one. The language of section 88–404.2(a) clearly states that "Any physician ... may execute a certificate ..." and in no manner implies that the execution of the certificate is mandatory. Obviously, the physician enjoys discretion in the matter.

The importance of these two points, no public function and lack of compulsion, in deciding whether state action exists is emphasized in the cases of *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), and *White v. Scrivener Corp.*, 594 F.2d 140 (5th Cir. 1979). The rationale of each of these cases requires the rejection of plaintiff's state action arguments. In both cases the arguments advanced to support a claim of state action were the same as asserted here: the delegation of authority by statute to private parties and the performance of a public function.

In *Flagg Brothers*, the Supreme Court was presented the question of whether a warehouseman's proposed sale of another's goods stored by him, permitted under a New York state statute, was state action for purposes of a 42 U.S.C. § 1983 complaint. The court held that it was not state action.

The statute in *Flagg Brothers* allowed a warehouseman to sell stored goods to satisfy his lien on the goods for the costs of storage. Respondent Brooks argued that this was a delegation of a function "exclusively reserved to the state." The reasoning behind the court's holding centered on two factors. First, the court noted that the statute was not the sole means of resolving the dispute between the petitioner and respondent. There were alternative methods of settling the problem. In addition, the respondent enjoyed statutory protections and remedies in case the sale of goods was illegal or improperly done. The court found the proposed sale not to be a public function of the state, noting that very few activities had been found to be a function "exclusively reserved to the states." 436 U.S. at 158–59, 98 S.Ct. at 1734.

The second significant factor was the conclusion that the statute did not require the actions complained of by the respondent. The non-compulsive nature of the statute militated against the argument that the state was inextricably bound into the warehouseman's activity. The court stated, at 164, 98 S.Ct. at 1737, "Our cases state 'that a State is responsible for the ... act of a private party when the State, by its law, has compelled the act.'"

The Fifth Circuit Court of Appeals followed the *Flagg* rationale in a case closely analogous, factually and legally, to the case at bar. In *White v. Scrivener*, 594 F.2d 140 (5th Cir. 1979), plaintiffs were detained by employees of the defendant in defendant's store on suspicion of shoplifting. The plaintiffs brought a section 1983 action claiming defendant's conduct constituted state action. Plaintiffs argued that the public function doctrine applied in that by detaining them defendant's employees were per-

forming a function "exclusively reserved to the state." Plaintiffs also asserted that state action existed because defendant acted under a state statute permitting detention of suspected shoplifters. That statute provided, in pertinent part, that a "... merchant ... may use reasonable force to detain a person for questioning ... when he has reasonable cause to believe that the person has committed theft of goods ...." 594 F.2d at 141 n.1.

The court of appeals rejected both theories of state action on the basis of *Flagg Brothers*. The court held that the act of detaining a person suspected of shoplifting was not an exclusive state function, but was an activity that was normally to be expected of a person desirous of protecting his property. It could not logically be held that a merchant acting to protect his property was acting for the state. Furthermore, the court found that the plaintiffs were not without remedies for any wrongful detention by the defendant.

With respect to the statute allowing detention, the court, again relying on *Flagg Brothers*, found significant that the statute did not compel the merchant to detain a shopper. It permitted such conduct if the statutory criterion were met. The court stated, at 143, "The Louisiana provision does not compel merchants to detain shoplifters, but merely permits them to do so under certain circumstances. Absent some compulsion or some overt state involvement, no state action can be found because of the mere existence of the statute."

In the case at bar, the plaintiff raises the same state action arguments raised in *Flagg Brothers* and in *White*. Present in this case as well are the factors found in *Flagg Brothers* and *White* that provided the foundations for the holdings of those courts of no state action. As discussed earlier, the provisions of section 88–404.2 do not compel the execution of a certificate, but merely permits it; nor does the statute encourage or pressure the use of a certificate. Also, the certificate is not the sole means by which a person can be required to submit to an examination. Under section

88–404.2(b), a certificate is unnecessary. The statute provides citizens with the means of protecting themselves from those persons suffering from alcohol or drug related problems, as well as at the same time helping those, who because of their problem, are unable to help themselves. Such concern and conduct is simply not the exclusive province of the state, and section 88–404.2 merely is a way for an ordinary citizen to manifest his or her interest in a positive way.

Lastly, as was found in *Flagg Brothers* and *White*, the plaintiff here is not without remedy. The Georgia health code, § 88–4 *et seq.*, amply provides for the invocation of legal measures to contest the validity of confinement. Furthermore, section 88–402.23 bestows only qualified immunity on a physician for the execution of a certificate. Thus, a malpractice suit is not barred in as much as the physician is liable for actions not taken in good faith.

Because of the existence, in this action, of those factors discussed above, which dictated a finding of no state action, the Court must conclude that there is but a weak link between the conduct of the defendant Roche and that of the state, and state action is not present. For the reasons cited above, the defendant Roche's motion to dismiss himself from this action is granted inasmuch as state action essential for the maintenance of a section 1983 action is not present.

### PENDENT JURISDICTION

Plaintiff's complaint asserts a state law claim for medical malpractice against defendant Roche alleging that in executing the physician's certificate the defendant did not employ the care and skill ordinarily used by physicians. Plaintiff contends that the court may hear this claim under the doctrine of pendent jurisdiction.

■ Before a court may exercise pendent jurisdiction over a state claim, certain criteria must be satisfied. The court must have jurisdiction over a substantial federal claim, and the federal and state claims must both arise from a "common nucleus of operative facts." Even if plaintiff can overcome these hurdles, the exercise of pendent jurisdiction is a matter of discretion with the trial court, not a matter of right of the plaintiff. *Jackson v. Stinchcomb*, 635 F.2d 462 (5th Cir. 1981).

■ In this case, however, the exercise of discretion does not enter into the picture as the plaintiff has failed to satisfy the criteria for pendent jurisdiction. Plaintiff has failed to state a federal claim against the defendant to which the state claim can be appended. Consequently, the court is unable to exercise pendent jurisdiction over the state claim, and it must therefore be dismissed for want of jurisdiction.

■ The result would be the same even under the concept of "pendent party" jurisdiction. This action involves the same jurisdictional questions presented in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1977). In that case, plaintiff attempted to bring in a third defendant solely on a state law claim on the grounds that the state law claim was derived from the common nucleus of operative facts as the federal claims asserted against other defendants in the action. Plaintiff contended that this satisfied the requirements of pendent jurisdiction. Plaintiff, in *Aldinger*, was dismissed from her county job. She brought a section 1983 action against her immediate employer and a state claim against the county itself.

The court stated that the jurisdiction of the court did not turn so much on the commonality of fact existing between the federal and state claims but upon the scope of the jurisdiction conferred by the statutes under which the plaintiff was suing. In other words, did Congress intend, in granting the courts jurisdiction over a particular area, to include the party now sought to be included? *Aldinger*, at 16–17, 96 S.Ct. at 2421. The court held, after a review of the scope of section 1983, that Congress did not intend for counties to be suable under section 1983, and, therefore, the court could not extend federal question jurisdiction over the party and the state law claim.

Common operative facts were not sufficient to overcome the clear limitations of section 1983.

Similarly, in this case, the plaintiff is attempting to sue a party on a state claim on the basis that it is pendent to the federal claims existing against other defendants rather than to a federal claim against the pertinent defendant. Under the rationale of *Aldinger*, section 1983 must be examined to ascertain Congress' intent on this jurisdictional matter. The statute shows that Congress did not intend for private individuals to be sued for private actions, and, as it was decided in *Aldinger*, the grant of jurisdiction should not be extended beyond the mandate of Congress.

Accordingly, the plaintiff's state law claim and the defendant are outside the scope of the court's jurisdiction.