William Mark WATKINS, Plaintiff,

v.

W.P. ROCHE, Jr., M.D., W. Douglas Skelton, M.D., Commissioner of the Department of Human Resources of the State of Georgia, and his Successors in Office; Mickey M. Crouch, M.D. and Douglas Lee Smith, M.D., Defendants.

Civ. A. No. CV 181–59.

United States District Court,
S.D. Georgia,
Augusta Division.

March 17, 1983.

See also 529 F.Supp. 327.

Stephen E. Shepard, Augusta, Ga., Kenneth R. Fielder, Cochran, Ga., for plaintiff.

Vivian Davidson Egan, Asst. Atty. Gen., Carol Atha Cosgrove, Atlanta, Ga., Wilson R. Smith, Lyons, Ga., for defendants.

## ORDER

BOWEN, District Judge.

The case before the Court, brought pursuant to 42 U.S.C. § 1983, 1985(3)[1] and

---

1. Although no motion before the court is directed to the propriety of plaintiff's § 1985(3) cause of action, it is patently obvious on the face of the complaint that this cause of action is fatally defective. In order to state a cause of action under this section plaintiff must allege some racial or class based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiff failed to allege this element. Accordingly, defendants are granted

1988, involves the alleged unconstitutional admission, detention and treatment of the plaintiff in Georgia Regional Hospital (Regional) at Augusta, Georgia, a state mental institution. Earlier this court dismissed defendant W.P. Roche, Jr. finding that Roche's conduct did not constitute state action. *Watkins v. Roche,* 529 F.Supp. 327 (S.D.Ga.1982). Dr. Roche, a private physician, executed pursuant to state law a physician's certificate authorizing the transporting of the plaintiff against his will to a state emergency receiving facility for an examination for possible drug or alcohol abuse or mental illness. Presently before the Court is the joint summary judgment motion of defendant Doctors Mickey M. Crouch and Douglas Lee Smith who attended to plaintiff upon his arrival and detention at the emergency receiving facility, Regional. Plaintiff contends that the manner in which he was involuntarily examined and admitted to Regional, as well as his subsequent treatment, was violative of his federal constitutional rights.[2] Defendants' motion for summary judgment raises two arguments, one directed to the viability of the § 1983 claim, lack of state action, and the other to a defense to a § 1983 action, "good faith" immunity. A brief historical backdrop of Crouch's and Smith's activities, upon which plaintiff's claims are based, will aid in understanding defendants' arguments.

After his arrival at Regional, plaintiff Watkins was taken to the North (or Admissions) Unit of Regional. There one is examined and a determination is made whether or not to admit the prospective patient. Upon being alerted of Watkins's arrival,

Crouch went to examine him. Under Official Code of Georgia § 37–3–43, a patient who is admitted to an emergency receiving facility must be examined as soon as possible and no later than twenty four hours after his arrival. The patient must be released within 24 hours unless the examining physician concludes that there is reason to believe that the patient may be mentally ill and in need of involuntary treatment. This was the purpose of Crouch's initial examination. Based on his examination Crouch determined that Watkins might be mentally ill and executed a certificate, pursuant to § 37–3–43(a)(1), which admitted the plaintiff to an evaluating facility—in this case Regional. Under Official Code of Georgia § 37–3–64 plaintiff could be detained for up to five days, excluding weekends and holidays, for evaluation and whatever treatment was deemed necessary by good medical practice. Official Code of Georgia § 37–3–63. Under § 37–3–64 the patient must be discharged at the end of the five day period, unless certain conditions not applicable here, exist, or upon a finding that further hospitalization or further evaluation is required.

After Crouch executed the § 37–3–43(a)(1) certificate, and plaintiff was admitted to the North Unit, Crouch, Smith and a third year medical student drew up a tentative diagnosis and treatment plan for the plaintiff. Plaintiff refused to sign a form describing the treatment goals of Crouch and Smith and indicating that he collaborated in the plan's formulation. During his stay, plaintiff was primarily under the care of Smith, who was, as a first year resident in psychiatry, under the supervision of

---

summary judgment on plaintiff's § 1985(3) cause of action.

**2.** It is not altogether clear which constitutional claims are directed against these defendants and which were leveled at Dr. Roche. Plaintiff asserts violations of his First Amendment rights of speech, association and redress of grievances; Fourth Amendment freedom from unreasonable searches and seizures; Sixth Amendment right to counsel; Eighth Amendment prosecution of cruel and unusual punishment, and liberty interests under the due process and equal protection clauses of the Four-

teenth Amendment. Of all these claims, it is clear that, with regard to the activities of Smith and Crouch, Fourteenth Amendment liberty interests are implicated. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). Plaintiff also alleges violations of state law. Specifically, the provisions of Official Code of Georgia § 37–3–140, 160, 162, 163 and 165(a) which deal with various rights of mental patients are alleged to have been breached by the defendants Crouch and Lee.

Crouch. Psychotropic drugs such as lithium carbonate and Haldol were administered to plaintiff, sometimes involuntarily, under the orders of Doctor Smith. At the end of the five day detention period plaintiff was discharged, but he was readmitted on a voluntary basis.

Plaintiff contends that Crouch recklessly and negligently failed to conduct a proper initial examination or to order necessary lab tests consistent with good medical practice. Because of the inadequate examination, Crouch negligently and recklessly violated plaintiff's right to liberty by signing the certificate authorizing his involuntary detention. It is further alleged that Crouch failed to review Smith's involuntary medication of plaintiff with lithium carbonate and Haldol.

With respect to Dr. Smith, it is alleged that he intentionally administered these psychotropic drugs which were inappropriate under the circumstances. Moreover, the drugs caused plaintiff to become physically ill, sluggish and stuporous. Also, plaintiff contends that defendants denied him his communication privileges with his family and friends and did not honor his demands to see the hospital superintendent, Dr. Crouch and various other physicians outside the hospital. In addition, plaintiff's demands for discharge were ignored. Finally, plaintiff alleges he was not given proper medical treatment for his arthritic condition and was confined to an unsanitary and unhealthy area.

### STATE ACTION

■ Crouch and Smith contend that they are not liable in this § 1983 cause of action because their activities, as those of Dr. Roche, do not constitute state action. To state a cause of action under § 1983 two essential elements must be present: (1) the challenged conduct was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities received by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

■ Defendants claim the under color of state law element is missing in this case. A state's involvement in the detention of a citizen in a mental institution constitutes state action. *See Parham v. J.R.*, 442 U.S. 584, 600, 99 S.Ct. 2493, 2503, 61 L.Ed.2d 101 (1979). Thus, the necessary inquiry for the court is whether the defendants' activities could be said to be those of the State. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Subsumed in this inquiry is the issue of defendants' professional relationship with the State of Georgia. If defendants are state officials, and their activities state action, the "under color of state law" element of § 1983 will be satisfied. *Lugar v. Edmondson Oil Co.*, —— U.S. ——, ——, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982). A review of the record in this case clearly indicates the presence of state action.

At the time of plaintiff's admission to Regional Dr. Crouch was a faculty member of the Medical College of Georgia, (MCG) part of the University System of the State of Georgia, an arm of the executive branch of the State. *See McCroan v. Bailey*, 543 F.Supp. 1201, 1207 (S.D.Ga.1982). His primary assignment was to render services as a psychiatrist at Regional. He, however, was not employed by Regional or its supervisory authority, the Department of Human Resources of the State of Georgia. Crouch's additional duties included occasional class instruction, and the supervision of doctors undergoing MCG's residency program in psychiatry at Regional. Furthermore, Dr. Crouch oversaw third and fourth year medical students undergoing their rotation assignments at Regional.

Dr. Douglas Smith was a first year resident in psychiatry and a licensed physician at the time Watkins was admitted. Although the residency program was under the auspices of MCG his training took place at Regional under the supervision of Dr. Crouch. His responsibility as a resident was to participate in the examination, evaluation and treatment of patients admitted to Regional. He was not, however, employed by Regional.

Glaringly apparent in this case is the fact that although the defendants were employed by MCG or participating in its programs, they did in fact render services to Regional. In fact, Dr. Crouch was the Unit Director of the North Unit at Regional. It was his job to determine whether or not a person being brought to the hospital needed to stay for further evaluation. In this capacity, Dr. Crouch is performing an activity reserved to the State. He is complying with the requirements of Official Code of Georgia § 37–3–43 which states that a patient admitted to an emergency receiving facility shall be examined within twenty four hours of his arrival. This examination is a state function.

The conclusion that once a patient is admitted to an emergency receiving facility state involvement begins is garnered from the applicable Georgia law. Watkins was transported to an emergency receiving facility under the authority of the physician's certificate signed by Dr. Roche. Once this certificate is executed the patient must be transported to an emergency receiving facility. Official Code of Georgia § 37–3–41. An emergency receiving facility is defined as:

> Any state owned and state operated facility ... designated as an emergency receiving facility ... any other facility within the State of Georgia ... as designated by the [Department of Human Resources] at the request of or with the consent of the governing officers of the facility.

Official Code of Georgia § 37–3–40 (Brackets added) Thus, it is evident that Watkins was taken to a facility for an examination operated for that purpose under the authority of the State. If the examining doctor determines that there is reason to believe the patient is mentally ill, he may execute another certificate the effect of which sends the patient to an evaluating facility § 37–3–43(a)(1). The statutory description of an evaluating facility is identical to that of an emergency receiving facility. Official Code of Georgia § 37–3–60.

During detention at an emergency receiving facility and an evaluating facility, a patient is entitled to a wide range of rights. These rights extend from participation in the planning of his treatment to safe, skillful treatment, Official Code of Georgia § 37–3–162, to the right to refuse treatment, Official Code of Georgia § 37–3–163, to communicate freely with persons outside the facility, § 37–3–142, to legal counsel, Official Code of Georgia § 37–3–141 and so on. Apart from federal constitutional requirements, there are rights that the state has afforded and cannot wrest away without complying with federal procedural due process standards. These rights and duties are limited to state owned or designated facilities. Clearly, the State has immersed itself so deeply into the affairs of a patient that a doctor, obligated to comply with these rights, working in a facility can be said to be working for the state. It would be disingenuous to say that a doctor's activities under these circumstances do not constitute state action.

Dr. Smith, although a resident, was obligated to adhere to a particular standard of care and not to hinder the exercise of a patients' rights under Georgia law. As a physician in a state institution he is the conduit through which the State's authority and power flows. His failure to abide by these rights, in effect, could constitute the state's deprivation of these rights. Although Dr. Smith was a resident under the auspices of MCG, he rendered services to Regional. In effect, the relationship between MCG and Regional is one arm of the State assisting another. The fact that he did not work for Regional does not extirpate state action from the case against Dr. Smith. The same conclusion, of course, applies to Dr. Crouch.

Accordingly, state action is present and defendant's motion for summary judgment on this ground is denied.

## GOOD FAITH

Defendants second argument centers on the qualified immunity or "good faith" defense. They assert that they did not act

with any intention of depriving plaintiff of his constitutional rights with malice or otherwise. Defendants rely on the good faith standard enunciated in *O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975) in which the Court, referring to *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), stated:

> Under that decision, the relevant question for the jury is whether O'Connor "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [Donaldson], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to [Donaldson]."

This statement from *O'Connor* is a recitation of the *Wood v. Strickland* standard on the scope of the qualified immunity defense. The standard contains two elements, an objective element, that is defendants knowledge of the law, and the subjective element, did defendants act maliciously. A showing of either element would abrogate a "good faith" defense. Defendants contend they have met both criteria. Plaintiff, of course, denies this to be the case.

■ It is undisputed that defendants are entitled to assert qualified immunity in this § 1983 action. *See O'Connor.* A ruling, however, on this defense via the defendants' motion must be deferred. In *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court rejected the subjective element of the *Wood* standard. The Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known." *Id.* —— U.S. at ——, 102 S.Ct. at 2738. Thus, the scope of a "good faith" defense is gauged by the objective test. Malice or ill will is irrelevant.

■ With respect to what is or is not "clearly established statutory or constitu-

tional rights" *Harlow* found this to be a question for the Court. In the case at bar, the parties have not briefed this particular aspect of the objective test. Because of the number and nature of the claims, some of which are not altogether clear, it is appropriate that all parties be allowed to submit briefs on the effect of the *Harlow* decision as to the defendants' "good faith" defense. Moreover, the parties may wish to make additional motions for summary judgment regarding the asserted causes of action, and the plaintiff should specify with clarity the particular constitutional deprivations that he attributes to each of the defendants.

The parties are admonished that any evidence consisting of interrogatories, depositions, affidavits, or otherwise materials relied upon in any motion, must be filed into the record before it can be considered.

Accordingly, plaintiff and defendants are directed to submit briefs regarding *Harlow v. Fitzgerald* within fifteen days of this order. The Plaintiff should specify his claims within the same time. A ruling on defendants summary judgment motion as to that issue is reserved.