**Betty Banks HARVEY, Plaintiff,**

v.

**Joseph H. HARVEY, Jr., et al., Defendants.**

**Civ. No. 89–42–VAL(DF).**

United States District Court, M.D. Georgia, Valdosta Division.

Oct. 17, 1990.

Jesse W. Walters, Albany, Ga., for plaintiff.

Frank C. Jones, William E. Hoffman, Jr., Gregory S. Smith, Atlanta, Ga., Phillip R. Taylor, Brunswick, Ga., O. Wayne Ellerbee, Valdosta, Ga., John T. McGoldrick, Jr., Macon, Ga., Wallace E. Harrell, Timothy Harden, III, Gilbert, Whittle, Harrell, Brunswick, Ga., Joseph A. Mulherin, III, Savannah, Ga., J. Converse Bright, Black, Bright & Edwards, Valdosta, Ga., for defendants.

FITZPATRICK, District Judge.

This case is now before the court on motions to dismiss by all defendants and a third-party claim by one of them. While reviewing the motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) the court must take the allegations of the complaint as true, *Walker Process Equip. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965), and liberally construe the complaint in favor of the plaintiff. *See*, Fed.R.Civ.P. 8(f); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). After a careful consideration of the law and facts in this case, the court has concluded that the motions to dismiss should be GRANTED.

## I. BACKGROUND

The sequence of events giving rise to this suit began when the plaintiff's husband, Joseph H. Harvey, Jr., informed Dr. Conway Hunter, Jr., that he believed his wife was mentally ill. Dr. Hunter then signed a certificate, pursuant to O.C.G.A. § 37–3–41, stating that the plaintiff appeared to be mentally ill and to present a substantial risk of imminent harm to herself or others as required by the statute. The plaintiff alleges that Mr. Harvey and Dr. Hunter were involved in a conspiracy to involuntarily commit her to a mental institution. She alleges that the certificate signed by Dr. Hunter was untrue and that he conducted an inadequate examination of her before signing it.

On October 22, 1987, Dr. Hunter had the police pick up the plaintiff and transport her to Charter-by-the-Sea Hospital (Charter), a private institution, on St. Simons Island, Georgia, which had been designated as an emergency receiving and evaluating facility under O.C.G.A. § 37–3–40. When she arrived, she was examined by Dr. Mark F. Friedman who executed a certificate stating that the plaintiff required involuntary treatment as required by O.C.G.A. § 37–3–43. The plaintiff alleges that the certificate was based on a superficial and inadequate examination.

The plaintiff also alleges that she was at no time informed of her rights under O.C.G.A. § 37–3–1, *et seq.* She claims that she was involuntarily incarcerated and that Dr. Friedman administered medications to her against her will. She alleges that both Dr. Hunter and Dr. Friedman failed to perform proper examinations and acted in concert with Mr. Harvey and Charter-by-the-Sea to deprive her of her constitutional rights.

In Count Two of her complaint, the plaintiff alleges that Mr. Harvey and his attorney, William S. Perry, falsely informed Berrien County Probate Judge John P. Webb that the plaintiff was incapacitated in order to keep her involuntarily incarcerated. She claims that they submitted a false statement of her condition to Judge Webb, who signed an order on October 29, 1987, appointing Mr. Harvey as his wife's emergency guardian without complying with the requirements given by O.C.G.A. §§ 29–5–6 and 29–5–8 for such an order. The plaintiff claims that her husband then used this order to have her involuntarily transported from St. Simons Island by airplane to Duke University Hospital in Durham, North Carolina.

On April 25, 1989, the plaintiff filed this suit against Mr. Harvey, Dr. Hunter, Dr. Friedman, Charter and Mr. Perry alleging violations of her constitutional rights as guaranteed by 42 U.S.C. § 1983. Each of the defendants filed a motion to dismiss (Charter and Harvey jointly) and Dr. Friedman also filed a motion to transfer, which was denied by this court on April 2, 1990. Mr. Perry filed a third-party complaint on June 6, 1989, against William T. Harvey, Joseph H. Harvey, III, Barbara H. Wiseman and Patricia H. Robinson, claiming that he relied on their sworn statements in preparing the guardianship petition and that he is entitled to indemnification and/or contribution if he is found liable to the plaintiff. Joseph H. Harvey, III filed a motion to dismiss this complaint on June 19, 1989.

## II. DISCUSSION

■ Plaintiff's claims against the defendants rest on alleged violations of her constitutional rights under the fourth, sixth and fourteenth amendments as guaranteed by 42 U.S.C. § 1983. This statute requires a showing that the plaintiff has been deprived of a right or privilege secured by the Constitution or laws of the United States and that such deprivation was achieved under color of state law. *See, Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Taken as true, the plaintiff's complaint would state a claim for the deprivation of her constitutional rights, so the remainder of the court's analysis will rest on the question of whether the defendants acted under color of state law.

The Georgia statutes in question are those allowing for the involuntary commitment of persons showing signs of mental disorders. *See,* O.C.G.A. §§ 37–3–40, –85. The laws the defendants acted under in the present case show a detailed commitment procedure. O.C.G.A. § 37–3–40 allows state and private hospitals to be designated as emergency receiving facilities. An involuntary admission to such a center requires either a physicians's certificate issued after an examination or a court order based on such a certificate or the affidavits of at least two persons attesting that they observed the irrational behavior of the person to be taken into custody within the preceding forty-eight hours. § 37–3–41. Once admitted, the patient must be examined within twenty-four hours and released unless she shows signs of mental illness or is under criminal charges. § 37–3–43. The facility must give the patient notice of her right to petition for a writ of habeas corpus and her right to legal counsel. § 37–3–44. Court-ordered evaluations are also permitted upon application by any person, but a hearing must be held and notice given to the patient, who has a right to counsel. §§ 37–3–61, –62.

■ The plaintiff is essentially claiming that by acting according to these statutes the otherwise private defendants were converted into state actors. Only in rare circumstances can private parties be converted into state actors for § 1983 purposes. The determination of whether there was sufficient state action so as to invoke the protections of federal civil rights statutes must be made on a case-by-case basis. *Sims v. Jefferson Downs, Inc.*, 611 F.2d 609, 611 (5th Cir.1980). In *NBC v. Communications Workers of America, AFL–CIO*, 860 F.2d 1022 (11th Cir.1988), the court listed three tests employed by the Supreme Court in making this decision: (1) the public function test; (2) the state com-

pulsion test; and (3) the nexus/joint action test.[1] The public function test covers only private actors performing functions traditionally within the exclusive prerogative of the state. The state compulsion test limits state action to cases where the government has coerced or at least significantly encouraged the action in question. Finally, the nexus/joint action test concerns situations where the government has insinuated itself into a position of interdependence with the private party so that they can be considered joint participants in the action. 860 F.2d at 1026–27. The court will now examine each of the defendants in the order of their involvement to determine whether any of them can be considered state actors.

### A. Mr. Harvey

■ It is unquestioned that Mr. Harvey is a private citizen, neither employed nor directed by the state. The only connection between Harvey and the state is his initiation of and participation in the hospitalization and guardianship process as allowed by state law. The court does not believe that this is sufficient to render him a state actor.

■ The public function test requires that a private actor perform a function within the exclusive prerogative of the state. Involuntary commitments, as Judge Posner reasoned in *Spencer v. Lee,* 864 F.2d 1376 (7th Cir.1989) (en banc), *cert. denied,* —— U.S. ——, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990), have long been performed by private actors and cannot be considered an exclusive function of the state even when rigorously regulated by the state. In some circumstances, a private party may be forced to take action to prevent a disturbed person from harming himself or others before the state becomes involved. A private commitment such as this does not become a state action merely because it is allowed by a state statute. To hold as such would be the equivalent of saying that a citizen's arrest, repossession

of a chattel or ejection of a trespasser could be a state action even though these are really private activities merely authorized by state law. 864 F.2d at 1379–81. Also, the court notes that the Georgia statutes allow laypersons to initiate the involuntary commitment process, O.C.G.A. § 37–3–41, which argues against a claim that such acts are within the exclusive prerogative of the state. Although they must comply with the requirements of state statutes, private commitments remain private actions. The public function test has not been met, and Harvey cannot be considered a state actor under it.

Likewise, the state compulsion test cannot be satisfied. There is simply no evidence that the state compelled or significantly encouraged Harvey to begin or participate in the involuntary commitment of his wife. Nothing in the Georgia statutes would force a private actor to involuntarily commit a disturbed person; it is the private actor who initiates the process when he judges it necessary. The court does not believe that the Georgia statutes involved in this case were enacted because the state wanted to encourage private commitments, just as the Georgia repossession laws were not enacted to encourage creditors to repossess debtors' goods. *See, Spencer,* 864 F.2d at 1379. Finally, the nexus/joint action test cannot be met either, as the only connection Harvey has with the state is that he acted as allowed by state law. This is not sufficient to convert him into a state actor. If it were, any creditor who repossesses a chattel or person making a citizen's arrest as allowed by law would be considered a state actor, a clearly unreasonable result.

The plaintiff's claims against Harvey are similar to those made in *Dahl v. Akin,* 630 F.2d 277 (5th Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981). In that case, a father brought a civil rights action against his daughter and her husband claiming that they used fraudulent court proceedings to commit him and

---

**1.** The court noted that some question existed as to whether these tests were actually different in operation or merely different ways of characterizing the same fact-bound inquiry. 860 F.2d at

1027. The similarities between them can be discerned from this court's discussion of how they apply to this case.

keep him from remarrying. The court noted that acting "under color" of state law requires more than acting with knowledge of and according to state statutes; it means acting under the pretense or authority of state law. Regarding the plaintiff, the prosecution of the private lawsuit against him, even if tortious conduct at state law, implied no authority or pretense beyond the first amendment right of petition. 630 F.2d at 281. In the present case, as in *Dahl*, the defendant acted as allowed by state law, but not under the authority or pretense of it.

In her Response Brief to the Brief of Defendants Harvey and Charter, the plaintiff fails to show any reason why Harvey should be considered a state actor. Although it is true, as the plaintiff notes, that a person who is not a state officer can act under color of state law when he is a willful participant in a joint action with the state, *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), there is no such joint action here, as was discussed above. The only state actor the plaintiff can link to Harvey is Judge Webb, and even that claim must fail.[2] In Count Two of her complaint, the plaintiff essentially claims that Harvey tricked Judge Webb into appointing him as her guardian. Even if this is taken as true, it only forms a claim for the misuse of state judicial procedures under state law, and certainly does not rise to the federal level. As discussed in the section of this order below concerning Mr. Perry, the plaintiff has failed to allege a conspiracy among the defendants and Judge Webb, and so has no claim which can survive a motion to dismiss. In sum, there is no reason to consider Mr. Harvey as a state actor, and the plaintiff's § 1983 claim against him must be dismissed for that reason.

### B. Dr. Hunter

Dr. Hunter, who issued the physician's certificate, gives two grounds in support of his motion to dismiss: (1) improper venue

and (2) lack of subject matter jurisdiction. The court will examine each of these in turn.

■ In support of his improper venue claim, Dr. Hunter points out that he resides in the Southern District of Georgia, unlike several of the other defendants, and that the events forming the bases of the plaintiff's allegations against him took place in that district. Dr. Hunter claims that this renders venue improper as to him in the Middle District of Georgia under 28 U.S.C. § 1391(b), which states:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

This interpretation of the statute ignores its last clause, which states that venue can be proper in a district other than the one where all defendants reside or the claim arose if "otherwise provided by law." The court is thus obliged to consider 28 U.S.C. § 1392(a), which allows civil actions to be brought in any district of a state where any of several defendants reside in that same state. This statute allows venue as to Dr. Hunter to be proper in the Middle District of Georgia, where this action was filed.

■ Like the other defendants, Dr. Hunter also claims that he was not a state actor as defined under 42 U.S.C. § 1983 and thus the court has no subject matter jurisdiction over any claims against him. The court agrees.

The most recent and comprehensive appellate case concerning private hospitals and physicians is *Spencer*, 864 F.2d 1376. In that case a private physician involuntarily committed the plaintiff to a private hospital. The court considered whether any connections between those private parties and the state existed so that they could be considered state actors. Although the court did not specifically apply the recognized tests, it addressed facts relevant to

---

**2.** The plaintiff also tries to establish a link between Harvey and Charter as a state actor. As discussed in a later section, however, this attempt also fails to establish a § 1983 claim, as the hospital cannot be considered a state actor.

each. Since private commitments had occurred for centuries, such activities could not be considered as a traditionally exclusive prerogative of the state. State compulsion was not present since there was no evidence that the state wanted to encourage involuntary commitments. There was no joint action since any police assistance in carrying out the commitment was insufficient to turn the private parties into state actors. Thus, the court held that the private parties were not state actors and not liable under § 1983. 864 F.2d at 1379–82.

Two other cases which need to be examined are *Watkins v. Roche*, 529 F.Supp. 327 (S.D.Ga.1981) [hereinafter *Watkins I*], relied upon by Dr. Hunter, and *Watkins v. Roche*, 560 F.Supp. 416 (S.D.Ga.1983) [hereinafter *Watkins II*], relied upon by the plaintiff. Both cases arose when a private physician issued a certificate involuntarily confining the patient to a state mental hospital. In *Watkins I*, a suit against the private physician, the court held that there was no state action since state law did not compel the issuance of the certificate, involuntary commitment was not dependent on the physician's certificate and could be obtained by other means and legal measures were available to the plaintiff to contest his confinement and the physician's good faith. Thus, the court reasoned, no public function was served, there was no state compulsion and an insufficient nexus between the public and private actors to warrant finding any state action. 529 F.Supp. at 329–32. In *Watkins II*, the court held that the doctors who attended the plaintiff upon his arrival at the state hospital were state actors since they were employees of a state university or participating in its programs and performed activities reserved to the state, even though not employed by the state hospital. 560 F.Supp. at 418–19.

Dr. Hunter cannot be considered a state actor for the same reasons that apply to Mr. Harvey and for those given in *Spencer*, 864 F.2d 1376, and *Watkins I*, 529 F.Supp. 327. The public function test is not satisfied as involuntary commitments are not traditionally within the exclusive prerogative of the state. Similarly, there is no evidence that the state has ever compelled or even strongly encouraged private commitments. Dr. Hunter merely acted as allowed by state law, but not under the authority or pretense of it, and thus his actions cannot be considered joint ones with the state. Dr. Hunter cannot be bound to the state so that he can be considered a state actor.

■ In her Reply Brief to Dr. Hunter's Motion to Dismiss, the plaintiff attempts to establish that Dr. Hunter was a state actor with little but conclusory statements that he was involved in a conspiracy to deprive her of her rights. These are unsupported by any evidence and are not enough to withstand a motion to dismiss. *Tauver v. Bar Harbor Congregation of Jehovah's Witnesses*, 633 F.Supp. 741, 745 (D.Me. 1985). Even if taken as true, her allegations are in fact claims that the requirements of the Georgia statutes were not met, an argument that should be considered in a state court rather than this one. She also tries to support her case by analogy to *Watkins II*, 560 F.Supp. 416, but as the court has explained earlier that case concerned the conduct of physicians who examined the patient after he arrived at a state treatment facility and were thus state actors; Dr. Hunter, by contrast, is clearly a private physician who examined the plaintiff before her commitment.

The gravamen of the plaintiff's complaint is that Dr. Hunter is a state actor because he acted as permitted by a state statute. As noted earlier, this is simply insufficient to render a private party an arm of the state. As stated by another court:

> To open physicians to federal suit by decreeing that they act for the state in making purely medical decisions would effectively chill the use, and accompanying benefit, of a private physician's judgment in an emergency situation simply because the physician may not be willing to give it for fear of being exposed to a lawsuit. . . .

*Watkins I*, 529 F.Supp. at 330.

### C. Charter-by-the-Sea

Charter is unquestionably a private corporation and not a state hospital, and there

is no allegation otherwise. Charter has been designated as an emergency receiving and evaluation facility as allowed by O.C. G.A. § 37–3–40. The plaintiff claims that since Charter has been designated such a facility as allowed by the statute, it was clothed in the authority of the state and thus obligated to protect her constitutional rights in accord with state law. Charter responds that this court has no subject matter jurisdiction over this case since it is not a state actor within the meaning of § 1983 and even if it is it cannot be sued for the acts of its employees under § 1983 on a respondeat superior basis.

■ In addition to *Spencer*, 864 F.2d 1376, there are some other cases concerning the question of whether a hospital can be considered a state actor for § 1983 purposes. The only Eleventh Circuit opinion dealing with facts similar to this case brought to the court's attention is *Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797 (11th Cir.1988) (en banc), *aff'd, Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In *Burch,* the plaintiff, while in a psychotic state, voluntarily committed himself to the defendant hospital and was later sent to a Florida state hospital, both of which were administered by state employees.[3] The Eleventh Circuit held that there was state action because:

> ... only by being clothed with the authority of state law did the appellees possess the power to commit a person to a mental institution if that person provided voluntary, express and informed consent. The appellees deprived Burch of his liberty in a way not available to a private citizen.

. . . . .

840 F.2d at 803. The Supreme Court affirmed this decision, but only on the narrow question of whether the plaintiff's complaint failed to allege a deprivation of due process under the rule of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68

L.Ed.2d 420 (1981). *Zinermon,* 110 S.Ct. at 979.

In *Greco v. Orange Memorial Hospital Corporation,* 513 F.2d 873 (5th Cir.1975), a physician sought a declaratory judgment that a private hospital's policy of prohibiting abortions was unconstitutional. After the case was dismissed, the appellate court affirmed that the hospital was not sufficiently connected with the state so as to give rise to a state action even though it had been built with public funds, was given tax-exempt status, used land and a building owned by the county and was bound by a lease obligating it to fulfill certain public goals. 513 F.2d at 876–77, 882.

One district court, however, reached a conclusion opposite the ones above when faced with facts similar to those in the present case. In *Ruffler v. Phelps Memorial Hospital,* 453 F.Supp. 1062 (S.D.N.Y. 1978), the plaintiff claimed that several defendants acted under color of state law and deprived him of his constitutional rights when they involuntarily committed him. One defendant, a private hospital, claimed that it was never a state actor, but the court held otherwise. Following the Second Circuit's precedent of *Perez v. Sugarman,* 499 F.2d 761 (2nd Cir.1974), relying on the pervasiveness of state control over private mental institutions and commitments and finding a close nexus between the state and the challenged action, the court held that the private hospital was a state actor for purposes of § 1983. 453 F.Supp. at 1067–71.

The reasoning of the above cases, with the exception of *Ruffler,* virtually compels the result in this one. The plaintiff's § 1983 claim against Charter must be dismissed since that hospital cannot be considered a state actor.

As stated above, the public function test covers situations where private actors perform tasks traditionally within the exclusive prerogative of the state. Even though Charter is a private actor and can perform functions as allowed by state law, this does

---

**3.** The Eleventh Circuit panel's opinion states that the personnel at both institutions were employed by the State of Florida. *Burch v. Apala-* *chee Community Mental Health Services, Inc.,* 804 F.2d 1549, 1556 (11th Cir.1986), *vacated,* 812 F.2d 1339 (11th Cir.1987).

not mean that the state has delegated to the hospital functions within its exclusive prerogative. As Judge Posner noted while analyzing Illinois law in *Spencer*, 864 F.2d at 1380–81, commitment by private actors has a long history and cannot be considered a state action, despite being subject to rigorous safeguards imposed by the state. The court believes that the situation in Georgia is the same. The statutes covering the treatment of involuntary patients, O.C.G.A. §§ 37–3–40, –85, allow for any physician, public or private, to involuntarily commit a person to any hospital, public or private, designated as a receiving facility. Involuntary commitments are not an exclusive prerogative of the state, and Charter was not fulfilling a public function by participating in this one.

Likewise, the state compulsion test cannot render Charter a state actor because there is no evidence that the state has coerced or at least significantly encouraged private commitments. Lastly, the nexus/joint action test also fails to support the plaintiff's position in this case, as the state has not become so interdependent with Charter that they can be considered joint participants in the plaintiff's involuntary commitment. Charter is a wholly private institution receiving no support from the state. The state was involved in this case only by way of its regulation of the private actors through the involuntary commitment statutes. This is simply not enough of a connection to say that the state and Charter were joint actors. To say otherwise would be the equivalent of holding that any private party who does a task regulated by the state becomes a state actor, which is both unrealistic and untrue.

The court believes that this result is consistent with the case law cited above, most obviously *Spencer* and *Greco*[4]. *Burch*, heavily relied upon by the plaintiff, does not speak to the contrary since the actors in that case were unquestionably state employees, thus the finding of state action in that case is not inconsistent with the lack of it here. Neither the Eleventh Circuit nor the Supreme Court addressed the present issue or any of the previously cited cases in their opinions, strengthening the court's belief that *Burch* and *Zinermon* do not speak to the case at bar.

The court is not persuaded to the contrary by *Ruffler*, 453 F.Supp. 1062, also relied upon by the plaintiff. That case was decided before *Spencer*, 864 F.2d 1376, the latest and most comprehensive authority on point, and is not binding on this court as is *Greco*, 513 F.2d 873.[5] The court believes that both these cases are better reasoned than *Ruffler*. Although the facts of *Greco* and *Ruffler* are not as similar as *Ruffler* is to the present case, *Greco* represents binding authority on this court and its reasoning and holding are broad enough to apply to the case at bar. For these reasons, the court declines to follow *Ruffler*.

■ As an alternative basis for granting Charter's motion to dismiss, the court agrees with Charter that even if it were to be considered a state actor, it could not be held responsible for the acts of its employees. A defendant cannot be held liable under § 1983 on a respondeat superior basis. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Recognizing this, the plaintiff states that she is suing Charter "based on its own violations of [her] constitutional rights, and its position as a state emergency receiving facility. It is not being brought in based on its employee's (sic) actions under the doctrine of Respondeat

---

4. In her Response Brief to Harvey and Charter, pp. 11–12, the plaintiff attempts to distinguish *Spencer* by claiming that the plaintiff in that case was challenging the constitutionality of the statutes in question rather than attempting to use them to show that the defendants were state actors, as is the case here. This claim is flatly contradicted by the language of *Spencer* itself. 864 F.2d at 1381.

 The plaintiff then tries to distinguish *Greco* by stating that it did not even involve a § 1983

action. Response Brief to Harvey and Charter, p. 15. Again, the plain words of the case in question show her to be mistaken, since *Greco* was indeed a § 1983 case. 513 F.2d at 874–75.

5. In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

Superior." Response Brief to Harvey and Charter, p. 17. If this is so, the plaintiff has failed to make a § 1983 claim against Charter at all, as she has made no allegation of a corporate act, policy or custom which infringed upon her rights. The acts attributed to Charter in her Complaint, e.g. paragraphs 17 and 27, are based on the actions of Charter employees, not Charter itself. The court can only conclude that despite the statement in her Response Brief the plaintiff must be attempting to hold Charter liable on a respondeat superior basis, which is not permissible under § 1983.

## D. Dr. Friedman

 Dr. Friedman, the physician who admitted the plaintiff to Charter, has filed three motions in connection with this case: one to dismiss or transfer, which was denied previously, one to dismiss any malpractice claims against him and one to dismiss for failure to state a claim upon which relief can be granted. The motion to dismiss any malpractice claims is based on the lack of an expert affidavit accompanying the complaint as required by O.C.G.A. § 9–11–9.1(b) (Supp.1990). The plaintiff, however, in her Reply Brief to Friedman's Motion to Dismiss Malpractice Claims, pp. 2–3, states that she intended to file a civil rights action against Dr. Friedman and not a medical malpractice action. The court therefore concludes that Dr. Friedman's motion to dismiss any malpractice claims has been rendered moot and will now consider his motion to dismiss for failure to state a claim.

The plaintiff essentially claims that Dr. Friedman is a state actor because he acted in accordance with state law and was employed by Charter, which was itself a state actor. Neither of these grounds is sufficient to support the plaintiff's claim. The same reasoning applied to the other defendants applies here. As explained above, a private party does not become a state actor simply because he acts in a manner allowed by a state statute, and the application of the three state action tests in no way supports a finding that Dr. Friedman could be considered a state actor. Likewise, since Charter was not a state actor, it follows

that an employee of Charter does not act under color of state law merely because he follows the procedures given by a statute. Dr. Friedman is a private physician employed by a private hospital and cannot be considered a state actor.

The plaintiff, in her Response Brief to Friedman's Motion to Dismiss for Failure to State a Claim, rests much of her argument on *Watkins II*, 560 F.Supp. 416. That case, however, involved an admitting physician at a state hospital, who was certainly a state actor. Here, the admitting physician was a private actor employed by a private institution, a clearly distinguishable set of facts.

## E. Mr. Perry

 The plaintiff claims that attorney William S. Perry acted in concert with Mr. Harvey and Judge Webb under color of state law during the guardianship procedure and supplied the court with false information so that the resulting guardianship order failed to comport with Georgia law. Even if the plaintiff's contentions that Mr. Perry knew of the misrepresentations and acted in concert with Harvey in violation of her rights are taken as true, they still state no cause of action under § 1983.

In her Brief in Response to Perry's Brief in Support of His Motion to Dismiss, pp. 9–10, the plaintiff recognizes that Perry's conduct in his capacity as an attorney does not make him a state actor, but claims that he is one because he conspired with Judge Webb. This is the sole basis for the plaintiff's claim against Perry, for, as discussed above, the court does not believe that Harvey was a state actor, and therefore any conspiracy with him would not have made Perry a state actor either. Judge Webb was not named as a defendant, the plaintiff states, only because he has judicial immunity.

 A close inspection of the complaint, however, reveals that this claim cannot stand. In Count Two, the plaintiff claims that Harvey and Perry acted together to deliver false information to the court

to secure a protective order, which was issued although it did not comply with the requirements of Georgia law. Even taken as true, the complaint fails to allege that Judge Webb was involved in any conspiracy but instead sets forth a claim for the misuse of state judicial procedures, which is not in itself actionable under § 1983. Section 1983 does not provide a remedy for the systematic misuse of state legal procedures by private parties, *see, Beker Phosphate Corp. v. Muirhead,* 581 F.2d 1187 (5th Cir.1978), and the use of state tribunals by private parties does not in itself constitute an action taken under the color of state law. *See, Torres v. First State Bank of Sierra County,* 588 F.2d 1322 (10th Cir.1978). Merely assisting in the obtaining of a state court guardianship order, without any allegation of a conspiracy between a private party and a state actor, does not constitute a state action for § 1983 purposes. *See, Cobb v. Georgia Power Co.,* 757 F.2d 1248 (11th Cir.1985). There is no reason to believe that Perry has engaged in any conduct which would make him a state actor.

### III. CONCLUSION

For the reasons discussed above, the plaintiff has failed to establish that any of the defendants were state actors, and so her § 1983 claim must fail. Plaintiff's remedy, if she has one, lies at state law. Accordingly, the motions to dismiss made by Mr. Harvey, Dr. Hunter, Charter-by-the-Sea, Dr. Friedman and Mr. Perry for lack of subject matter jurisdiction are hereby GRANTED. Dr. Friedman's motion to dismiss for lack of venue is DENIED. In light of this decision, the court need not rule on the third-party complaint.

SO ORDERED.